CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning (212047)
adunning@cgsh.com
Samuel Blankenship (339905)
sblankenship@cgsh.com
Kimberly Bittinger (359907)
kbittinger@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650-815-4100

Nowell D. Bamberger (*pro hac vice pending*)
nbamberger@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

*Counsel for Defendant*
*AliExpress E-Commerce One Pte., Ltd*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JOSEPH ABDULLAH on behalf of himself and all similarly situated persons,

Plaintiff,

v.

ALIEXPRESS E-COMMERCE ONE PTE., LTD,

Defendant.

Case No. 3:25-CV-05206 CRB

**DEFENDANT ALIEXPRESS E-COMMERCE ONE PTE., LTD'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Hearing Date: February 13, 2026
Time: 10:00 a.m.
Courtroom: 6
Before: Hon. Charles R. Breyer

# TABLE OF CONTENTS


NOTICE OF MOTION ..... 1

SUMMARY OF ARGUMENT ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. INTRODUCTION ..... 2

II. BACKGROUND ..... 3

A. AliExpress and Its Alleged Use of Third-Party Tracking Tools ..... 3

B. Plaintiff's Single Visit to the AliExpress Website ..... 4

C. Similar Actions by Plaintiff and His Counsel ..... 5

III. ARGUMENT ..... 5

A. All Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) ..... 5

1. Legal standard ..... 5

2. Plaintiff lacks Article III standing ..... 6

a. Plaintiff fails to allege cognizable economic harm ..... 7

b. Plaintiff fails to allege invasion of a protected privacy interest ..... 8

B. Plaintiffs' Claims Should Also Be Dismissed Under Rule 12(b)(6) ..... 12

1. Legal standard ..... 12

2. Plaintiff fails to state a claim for violation of the CCPA (Count II) ..... 12

3. Plaintiff fails to state a claim for violation of the UCL (Count III) ..... 14

4. Plaintiff fails to state a claim for violation of CIPA (Count I) ..... 16

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... 12

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ... 15

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ... 9

*Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) ... 2

*Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ... 1,6,8,10

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ... 5,6

*Danfer-Klaben v. JPMorgan Chase Bank, N.A.*, 2022 WL 3012528 (C.D. Cal. Jan. 24, 2022) ... 14

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ... 12

*Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146 (N.D. Cal. 2024) ... 14

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) ... 14

*Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ... 16

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 10,11

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) ... 15

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 10,12

*Hoard v. Cap. One, N.A.*,
2024 WL 4611449 (S.D. Cal. Oct. 29, 2024) ........ 15

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 7

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ........ 15

*Kenney v. JPMorgan Chase Bank, N.A*,
2025 WL 2117415 (C.D. Cal. June 13, 2025) ........ 14

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ 8

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 1,6,8,10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 2,9,16

*Kwikset Corp. v. Sup. Ct.*,
51 Cal. 4th 310 (2011) ........ 2,15

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ........ 7

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ........ 15

*Lien v. Talkdesk, Inc.*,
2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ........ 10

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........ 7

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ........ 6

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 13,14

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)........................................................................ 9

*Mirmalek v. Los Angeles Times Comm'cns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)............................................................ 16

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014)........................................................................ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................................................ 1,6-8,11

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........................................................................ 9

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ........................................................ 11

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. Mar. 3, 2025) ...................................................... 14,15

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ........................................................................ 12

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................ 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................ 6

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)........................................................................ 5

*Thomas v. Papa John's Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd.* 2025 WL 1704437 (9th Cir. June 18, 2025) ........................................................................ 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................ 1,6,8,10

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)........................................................................ 10

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........................................................................ 12

**Rules and Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................ 4

Cal. Penal Code § 638.51 ........................................................................ 4

Cal. Civ. Code § 1798.81.5 ........ 1,4,12-14

Cal. Civ. Code §1798.100 ........ 4

Cal. Civ. Code § 1798.140 ........ 13

Cal. Civ. Code § 1798.150 ........ 1,12,13,16

Fed. R. Civ. P. 12 ........ 1,5,6,12

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on February 13, 2026 at 10:00 a.m. in the above-captioned court, Defendant AliExpress E-Commerce One Pte. Ltd. will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff's Second Amended Complaint filed on September 5, 2025 (ECF No. 20) (the "SAC") with prejudice for lack of subject matter jurisdiction and failure to state a claim. This motion is based on the memorandum of points and authorities below, the accompanying Request to Consider Documents Incorporated by Reference and for Judicial Notice ("RJN") and Declaration of Angela L. Dunning ("Dunning Declaration") with exhibits thereto; all papers on file in this action; and such other matters as may be presented at the hearing.

## SUMMARY OF ARGUMENT

The Court should dismiss all claims in the SAC for lack of Article III standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rules") because Plaintiff fails to plead the requisite injury to support federal jurisdiction. Under *TransUnion LLC v. Ramirez*, a statutory violation does not suffice to confer standing or jurisdiction absent a showing of concrete injury. 594 U.S. 413, 426 (2021); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (holding that a plaintiff who brought a claim under a privacy statute must still allege a concrete injury to a harm "traditionally recognized as providing a basis for lawsuits in American courts" to establish Article III standing) (citing *TransUnion*, 594 U.S. at 425). Thus, numerous cases have ordered dismissal of claims under California privacy and unfair competition statutes for lack of Article III standing, even where a statutory violation is otherwise adequately pleaded. *See, e.g., Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177 (N.D. Cal. 2025) (dismissing California Invasion of Privacy ("CIPA") and California Unfair Competition Law ("UCL") claims for lack of Article III standing); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (dismissing CIPA claim for lack of Article III standing).

Dismissal is also appropriate as to all claims in the SAC under Rule 12(b)(6). Plaintiff does not allege facts to establish that AliExpress collected "nonencrypted and nonredacted personal information, as defined in [Cal. Civ. Code § 1798.81.5(d)(1)(A)]," as required to state a claim under the California Consumer Privacy Act ("CCPA"). Cal. Civ. Code § 1798.150(a). Plaintiff does not

allege the concrete economic injury necessary for standing to pursue his UCL claim, which is even narrower than Article III standing. *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 324 (2011). Nor does Plaintiff plead facts sufficient to allege a violation of CIPA. *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025).

The Court should dismiss the entire SAC with prejudice as amendment would be futile.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This lawsuit is a manufactured dispute brought by an opportunistic plaintiff seeking to gin up class claims without any actual or alleged injury. It is precisely the type of lawsuit that California voters passed Proposition 64 to curtail – claims brought "as a means of generating attorneys fees" "where no client has been injured in fact" on behalf of "clients who have not used the defendant's product or service." *Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006).

The plaintiff in this putative class action, Joseph Abdullah, alleges that he accessed the AliExpress e-commerce website only once. He does not allege that he made any purchase or shared any specific information about himself during this visit. Rather, upon accessing the website, he claims he ran sophisticated analytics to detect whether it uses common third-party digital tracking tools, including "cookies," the use of which is conspicuously disclosed in AliExpress's Privacy Policy. In other words, Plaintiff's only visit to the AliExpress platform was not as a good faith user; it was simply a calculated stop on the road to filing suit. And the gamut fails. His allegations that his privacy rights were invaded by the tracking of information, such as the IP address and browser type of the device he used, in violation of the California Invasion of Privacy Act ("CIPA"), the California Consumer Privacy Act ("CCPA"), and the California Unfair Competition Law ("UCL"), fail to establish subject matter jurisdiction or to state an actionable claim for relief.

First, Mr. Abdullah fails to plead any cognizable injury in fact, as required for Article III standing. He does not allege that he provided or AliExpress took any of his confidential information (which is not surprising given that he does not claim ever to have transacted on AliExpress). Courts have uniformly rejected claims of injury premised on the collection of information like that at issue here, dismissing California privacy and unfair competition claims for lack of subject matter

jurisdiction. Second, Mr. Abdullah does not (and cannot) allege the core elements of his CCPA and UCL claims. He asserts no hacking of his computer, no loss of "personal information," and no illegal or deceptive act. Indeed, on the facts pled, the CCPA claim does not even permit a private right of action. These defects cannot be cured; the entire SAC should be dismissed with prejudice.

## II. BACKGROUND[1]

### A. AliExpress and Its Alleged Use of Third-Party Tracking Tools

AliExpress, accessible at www.aliexpress.us (the "Website"), is one of the world's largest online marketplaces. ¶¶ 17–19. The Website serves as a digital storefront, allowing users to explore product listings, communicate with sellers, and complete purchases. ¶¶ 19–20. Like many e-commerce companies, AliExpress uses third-party tracking tools, including "cookies" and similar technologies, to improve users' experiences on the Website and to refine and track the success of its marketing strategies. AliExpress conspicuously discloses this commonplace practice in its Privacy Policy and Cookie Notice, both of which are publicly available. Dunning Decl., Exs. 1, 2.[2]

Plaintiff alleges that "[w]hen a user visits the Website, a suite of background tracking technologies[3] is activated immediately upon page load," the use of which allows AliExpress to track and analyze "user behavior at a highly granular level and to leverage that insight in real time for marketing optimization, user targeting, and business intelligence." ¶ 65. Plaintiff alleges that these tracking technologies, in general, may collect "User Information," alleged in the SAC to include "IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." ¶ 9; *see also* ¶ 37 (alleging that the Third-Party Trackers collected "IP addresses, device characteristics, browser types, page navigation behavior, and unique tracking cookies").

[1] Alleged facts are drawn from the SAC without agreement as to their accuracy. Citations to "¶" and "Ex." are to the paragraphs of the SAC and exhibits to the Dunning Declaration, respectively; all emphases are added; and internal citations and quotation marks are omitted.

[2] To the extent any putative class member's claims are governed by AliExpress's Terms of Use (Ex. 3), as would be the case for any user who created an account, AliExpress reserves the right to seek compliance with the dispute resolution mechanisms therein, including compulsory arbitration.

[3] Plaintiff alleges that AliExpress uses six different trackers operated by third parties: (1) Google Ads/Double Click; (2) Facebook Pixel; (3) Bing/Microsoft Ads; (4) Trade Desk; (5) Pinterest, Inc.; and (6) Rubicon (the "Third-Party Trackers"). ¶ 8.

**B. Plaintiff's Single Visit to the AliExpress Website**

Plaintiff alleges that he is a California resident and that he visited the Website on May 28, 2025, "during which time Plaintiff submitted private information … in order to complete a purchase from ALIEXPRESS with his credit card." ¶ 16. He does not describe what "private information" he purportedly "submitted" or claim that he actually made a purchase (and, in fact, AliExpress has no record that he ever did). He does not assert that any of this "private information" was transmitted to any third party or that it was collected and tracked by AliExpress or any Third-Party Tracker. Nor does he allege that he opened or attempted to open an AliExpress account. He does not allege what device he used to access the Website, or whether that device or the unspecified "private information" he submitted belonged to him personally or, for example, to a business or law firm. While the SAC proclaims that Mr. Abdullah's privacy was invaded, it never specifically alleges what information he contends was collected *from him* apart from "full URLs" (i.e., the AliExpress webpages he visited) and the public "IP address" of whatever device or service he was using to access the Website – a conspicuous omission given that he apparently visited the Website to evaluate whether he could sue AliExpress. ¶¶ 45, 52. Nor does the SAC identify any injury that Plaintiff specifically claims to have suffered as a result of the conduct alleged.

Nevertheless, based on these allegations, Plaintiff asserts putative class claims against AliExpress, on behalf of "All persons within California whose browser was subject to installation, execution, embedding, or injection of the Trackers by the Defendant's Website during the relevant statute of limitations period" (¶ 145), for violation of: (1) CIPA, Cal. Penal Code § 638.51, by allegedly collecting IP addresses and other unspecified User Information (¶¶ 151–54); (2) CCPA, Cal. Civ. Code §1798.100, by allegedly collecting and sharing unspecified "personal information" of users without notice or a chance to opt out (¶¶ 155–172); and (3) the UCL, Cal. Bus. & Prof. Code § 17200, based on the same allegations (¶¶ 173–181).[4]

[4] Only "California residents" may sue under the CCPA. Cal. Civ. Code § 1798.81.5. As such, Mr. Abdullah's proposed class of persons "within California" is facially defective. As Mr. Abdullah is the only plaintiff currently before the Court and claims to be a California resident, AliExpress reserves this and all other challenges to his proposed class definition.

### C. Similar Actions by Plaintiff and His Counsel

Aside from generic allegations about accessing the AliExpress website and Plaintiff's name and county of residence, next to nothing at all is alleged about him. ¶ 16. Public court records confirm that Mr. Abdullah, represented by the same counsel, has filed at least two other lawsuits this year in this District asserting nearly identical claims. *See Abdullah v. The Hartford Ins. Group Inc.*, No. 25-6453 (N.D. Cal. filed July 31, 2025); *Abdullah v. Richemont N.A. Inc.*, No. 25-9144 (N.D. Cal. filed Oct. 23, 2025). He and his counsel have also filed scores of other California class action complaints over the last two decades.[5] And Plaintiff's counsel has recently flooded the courts with cookie-cutter claims against all sorts of companies on behalf of other repeat plaintiffs.[6]

## III. ARGUMENT

### A. All Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

As discussed below, Mr. Abdullah's claims suffer from a number of pleading defects warranting dismissal under Rule 12(b)(6). The Court need not reach those defects, however, because, as a threshold matter, the SAC fails to allege the requisite injury in fact to confer Article III standing, necessitating dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

#### 1. Legal standard

Article III of the United States Constitution limits federal jurisdiction to "[actual] cases or controversies." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386

---

[5] *See, e.g.*, *Abdullah v. Coastal Ventures Ltd.*, No. 06-4783 (N.D. Cal. filed Aug 7, 2006); *Abdullah v. Bay Area Oil Supply*, No. 06-4784 (N.D. Cal. filed Aug. 7, 2006); *Abdullah v. Harman-Van Norman, Inc.*, No. 06-4785 (filed Aug. 7, 2006). Mr. Abdullah also appears as the named plaintiff in 39 actions in the Eastern District of California.

[6] *See, e.g., Tasker v. BMO Bank, N.A.*, No. 25-1304 (C.D. Cal. May 28, 2025); *Martines v. The Pep Boys*, No. 25-4643 (C.D. Cal. May 22, 2025); *White v. Esty, Inc.*, No. 25-5644 (N.D. Cal. July 3, 2025); *Martines v. Simple Tire LLC*, No. 25-06453 (C.D. Cal. July 22, 2025); *Arnold v. Rocket Cos.*, No. 25-1887 (C.D. Cal. July 23, 2025); *White v. Airbnb, Inc.*, No. 25-6464 (N.D. Cal. July 31, 2025).; *Dawidzik v. Tesla*, No. 25-1982 (C.D. Cal. July 31, 2025); *Dawidzik v. Gen. Motors Co.*, No. 25-2069 (C.D. Cal. Aug. 8, 2025); *Arnold v. Poshmark, Inc.*, No. 25-6917 (N.D. Cal. Aug. 15 2024); *Tasker v. Disney*, No. 25-2368 (C.D. Cal. Sept. 9, 2025); *Tasker v. Nike, Inc.*, No. 25-2377 (C.D. Cal. Sept. 10, 2025); *Tasker v. Fiverr Inc.*, No. 25-2397 (C.D. Cal. Sept. 12, 2025).

F.3d 1169, 1174 (9th Cir. 2004); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("courts have 'no business' deciding legal disputes ... in the absence of such a case or controversy"); Fed. R. Civ. P. 12(b)(1). To establish standing, a plaintiff must allege that: (1) he has suffered a concrete injury-in-fact; (2) the injury is fairly traceable to defendants' challenged conduct; and (3) the injury will likely be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Injury-in-fact means "an invasion of a legally protected interest" that is "concrete and particularized." *Id.* at 560. The injury must be "real, not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 352 (2016). The party invoking federal jurisdiction bears the burden of showing that it has standing. *TransUnion*, 594 U.S. at 430–31Absent standing, a suit should be dismissed under Rule 12(b)(1). *See Cetacean*, 386 F.3d at 1174 (collecting cases).

**2. Plaintiff lacks Article III standing**

The gist of Plaintiff's claims is that he ferreted out and identified purported technical violations of certain California privacy statutes by AliExpress. This does not suffice to confer on him the requisite standing to pursue his claims in federal court. As the Supreme Court has repeatedly held, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC*, 594 U.S. at 426 (citing *Spokeo, Inc.*, 578 U.S. at 341). Instead, to satisfy Article III, a plaintiff must allege an actual injury to bring a claim in federal court, even if a statute would otherwise provide a cause of action. *Id.; Popa,* 153 F.4th at 792 (holding that plaintiff's allegations of a violation of a Pennsylvania privacy statute did not, alone, establish Article III standing). Accordingly, courts in this district regularly dismiss CIPA and other California privacy claims for failure to plead a concrete injury, irrespective of whether a statutory violation has been adequately alleged. *See e.g., Khamooshi*, 786 F. Supp. 3d at 1177 (dismissing CIPA and UCL claims for lack of Article III standing; *Carolus*, 2025 WL 1338193, at *1 (same, CIPA).

Here, the SAC alleges that AliExpress's collection and monetization of User Information causes two purported injuries: (1) "economic harm" (¶ 59) and (2) a "violation of a legally protected privacy interest that is both concrete and particularized" (¶ 33). Neither suffices to confer Article III standing on Mr. Abdullah in this case.

**a. Plaintiff fails to allege cognizable economic harm**

The SAC is full of generalized allegations about how the internet and tracking technologies work, but largely devoid of *specific* assertions about what happened *here*. Plaintiff's economic harm allegations conspicuously follow this pattern. He alleges that AliExpress's "monetization of personal data constitutes actionable economic harm ... as a 'misappropriation-like injury.'" ¶ 59. In support of this conclusory allegation, he asserts that certain categories of information (social security numbers, bank account records, contact information, birthdays, full web browsing histories, addresses) carry "measurable economic value." ¶¶ 180, 54, 57. But Plaintiff does not allege that he provided, or that AliExpress or the Third-Party Trackers collected, any of these types of information from *him*. *Compare* ¶¶ 9, 37 (defining "User Information") *with* ¶¶ 54–58 (alleging that *other* categories of data, *not* included in the definition of "User Information," are valuable). It is not enough for Plaintiff to allege theoretically that *some* kinds of personal information may have value; he was required to allege that *his* personal data allegedly disclosed or tracked by AliExpress or Third-Party Trackers carried "independent economic value" to *him* as an "individual user." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). His failure to do so, alone, is fatal under controlling authority. *See Popa*, 153 F.4th at 792 (violation of state privacy law did not confer Article III standing in the absence of plaintiff-specific injury).

The Complaint's deficiency is compounded by Plaintiffs' inability to allege that he was personally deprived of the value of any of his "User Information" allegedly collected and shared. He does not allege that he has ever attempted to, or would, sell any User Information, or that he is now foreclosed from doing so as a result of AliExpress's conduct. All he alleges is that AliExpress has benefited from its use of Third-Party Trackers (*see* ¶ 62), which does not suffice. *See Low v. LinkedIn Corp.*, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) (dismissing UCL and invasion of privacy claims for lack of Article III standing where plaintiff "failed to allege how he was foreclosed from capitalizing on the value of his personal data" as a result of defendant's collection); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014) (to plead Article III standing, Plaintiff "must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own"); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532,

at *5 (C.D. Cal. Apr. 28, 2011) (no Article III standing for claims premised on collection of browsing history where plaintiffs did "not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of [defendant's] alleged conduct").

The analysis in two recent decisions from this district—*Khamooshi* and *Carolus*—is on point. In *Khamooshi*, the plaintiff asserted claims under CIPA and the UCL premised on the collection of IP addresses and device data by third-party trackers. The court dismissed the claims, finding that the collection of such information could not establish the "concrete injury" required for Article III standing, "even if [plaintiffs] have asserted a violation of CIPA." 786 F. Supp. 3d at 1181 (citing numerous cases holding, after *TransUnion*, that a statutory violation does not suffice to establish Article III standing). The court later dismissed an amended complaint with prejudice on the same grounds. *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025). Likewise, in *Carolus*, the court dismissed a CIPA claim premised on the tracking of IP addresses, "browser and device data" and "other identifying information" for "lack of Article III standing," reasoning that Plaintiffs had failed to plead facts to establish "the potential monetary value of their IP addresses nor any theory for how (or to what degree) the value of that information decreases when Nexstar tracks it." 2025 WL 1338193, at *1.

Here, despite amending twice already, Plaintiff fails to allege—because he cannot—how collection of his IP address and URLs of the (unidentified) pages he visited caused him economic injury. His allegations of economic harm fall woefully short of establishing Article III standing.

**b. Plaintiff fails to allege invasion of a protected privacy interest**

As a fallback, Plaintiff also alleges that the collection and use of his personal data by Third-Party Trackers constitutes "a violation of a legally protected privacy interest." ¶ 33. But this conclusory allegation likewise fails to plead a concrete injury under well-settled Supreme Court law.

Intangible harms, such as an invasion of privacy, are sufficiently concrete only if they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC*, 594 at 425; *see Popa*, 153 F.4th at 792 (holding that there is "no free-roaming privacy right at common law," and thus plaintiffs must plead an injury specific to a

harm recognized in *TransUnion* to establish Article III standing). In the privacy context, courts "make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1040 (N.D. Cal. 2014)). "To survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Id.* Courts then "must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *I.C., v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). "Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025).

Here, Plaintiff falters at step one. The SAC alleges that Mr. Abdullah "submitted private information on [AliExpress's] Website in order to complete a purchase from ALIEXPRESS with his credit card." ¶ 16. But Plaintiff does not identify what this information purportedly consisted of, much less that it was "personal or sensitive" or improperly collected, disclosed or exfiltrated. Nor does Plaintiff identify any "personal or sensitive" information belonging to him that was collected by Third-Party Trackers. The SAC is broadly written in the abstract, describing what kinds of "User Information" various Third-Party Trackers are *capable* of collecting, rather than pleading what information they actually collected from him that might implicate any traditional privacy interests.[7] Courts in the Ninth Circuit routinely dismiss claims for this precise defect. *See, e.g., Mikulsky*, 682 F. Supp. 3d at 864–65 (dismissing CIPA and invasion of privacy claims for lack of Article III standing where plaintiff merely alleged a disclosure of "personal information"); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim on Article III grounds for failure to identify the personal information disclosed); *Kishnani*, 2025 WL 1745726, at *4 (dismissing CIPA claim for lack of Article III standing where the plaintiff failed to "allege that the Website collected *his* biographical information") (emphasis in original).

---

[7] Plaintiff's allegation that the Third-Party Trackers are "designed to capture" "information such as [] phone number, email," ¶ 153, is at odds with his more specific description of what information each Third-Party tracker actually collects, which does not include this data. ¶¶ 73, 84, 98, 108, 121, 134. Notably, the SAC never alleges that Plaintiff provided his phone number or email.

Even if Plaintiff had alleged that the Third-Party Trackers collected his User Information, the SAC would still fail to adequately plead Article III standing under *TransUnion*. To be actionable, an alleged privacy violation must bear a "close relationship" to a "harm traditionally recognized as providing a basis for a lawsuit in American courts," thus, the information at issue must be "personal and private." *Lien v. Talkdesk, Inc.*, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) (citing *TransUnion,* 594 U.S. at 432). And a concrete injury only arises where disclosure of such information would be "highly offensive to a reasonable person." *Khamooshi,* 786 F. Supp. 3d at 1180 (citing *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 966 (9th Cir. 2023)). This is a high bar; even "disclosure of highly personal information such as social security numbers" may not be "'highly offensive.'" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citing *Low*, 900 F. Supp. 2d at 1025). Plaintiff comes nowhere close to clearing this bar.

First, Plaintiff's allegations concerning the Third-Party Trackers' alleged collection of public IP addresses cannot constitute a concrete privacy injury. "When internet users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process." *Khamooshi,* 786 F. Supp. 3d at 117; *see also* ¶¶ 43, 44 (an IP address is "indispensable" to "efficient communication over the Internet"). As such, "[I]nternet users have no expectation of privacy in ... IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Indeed, "the cases are legion holding that a person does not have a legitimate expectation of privacy in an IP address." *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025); *see also Khamooshi*, 786 F. Supp. 3d at 1180 ("IP addresses are information about an address associated with a device, not sensitive personal information"); *Heeger*, 509 F. Supp. 3d at 1189–90 (finding no Article III standing for the collection of IP addresses); *Carolus*, 2025 WL 1338193, at *1 (same). Notably, Plaintiff's allegations here are even more deficient, since the SAC does not allege whether Plaintiff used his own device or IP address to access the AliExpress Website, rather than that of a third-party, in which he would have no privacy interest at all.

Second, Plaintiff's allegations that the Third-Party Trackers collect other types of "User Information," such as "browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP" (¶ 9), likewise cannot constitute a concrete privacy injury. Courts in this Circuit have repeatedly held that the collection of this type of innocuous browser tracking information is routine and often *anticipated* by internet users, such that users do not have a reasonable expectation of privacy in this information. *See, e.g., Thomas v. Papa John's Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024), *aff'd.* 2025 WL 1704437 (9th Cir. June 18, 2025) (plaintiffs did not have a reasonable expectation of privacy over their mouse movements, clicks, keystrokes, and URLs of web pages visited); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (no expectation of privacy in user's mouse movements, clicks, keystrokes, keywords, URLs of webpages visited, product preferences, interactions on a website, user/device identifiers, or website browsing activities).

By way of further example, in *Hubbard v. Google*, the court dismissed privacy claims premised on the use of cookie trackers to collect browsing information such as "the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information," acknowledging the "commonplace collection and sale of such data." 2024 WL 3302066, at *2, 7 (N.D. Cal. 2024). Noting that this is a "routine commercial behavior," the court found that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much.*" *Id.* at *7 (emphasis in original); *accord Hammerling*, 615 F. Supp. 3d at 1090 (collection of similar data that is a "'routine commercial behavior' is not a 'highly offensive' intrusion of privacy").

In keeping with this reasoning, the Ninth Circuit and lower courts consistently dismiss on Article III grounds claims involving the tracking and collection of browser information like that at issue here. *See e.g., Popa*, 153 F.4th at 786, 791 (affirming dismissal of privacy claim for lack of Article III standing as the collection of "mouse movements, clicks, keystrokes ..., URLs of web pages visited, and/or other electronic communications in real-time" was not a "highly offensive" disclosure, and plaintiff failed to identify any "embarrassing, invasive, or otherwise private

information collected"); *Heeger*, 509 F. Supp. 3d at 1189 (dismissing privacy claims under California common law, the California constitution, and CIPA for lack of Article III standing where third-party trackers collected browser and device data, IP address, and other information). Plaintiffs' claims in this case should meet the same fate—dismissal for lack of Article III standing.

**B. Plaintiffs' Claims Should Also Be Dismissed Under Rule 12(b)(6)**

Dismissal is appropriate for the additional reason that the SAC fails to allege facts sufficient to state a claim under Fed. R. Civ. P. 12(b)(6).

**1. Legal standard**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support" one. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive dismissal, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Pleading facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Leave to amend should be denied where the failure to cure pleading defects is a "strong indication that the plaintiffs have no additional facts to plead" and amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

**2. Plaintiff fails to state a claim for violation of the CCPA (Count II)**

Plaintiffs' claim for violation of § 1798.150(a) of the CCPA is premised on allegations that AliExpress failed to give users notice or the ability to opt of the collection of their data. ¶¶ 164–170. But even assuming that were true, the CCPA *only* provides a limited private right of action to a "consumer whose nonencrypted and nonredacted personal information, *as defined in* [Cal. Civ. Code § 1798.81.5(d)(1)(A)] or whose email address in combination with a password or security question and answer that would permit access to the account is subject to an *unauthorized access and exfiltration, theft, or disclosure* as a result of the business' violation of the duty to implement

and maintain reasonable security procedures...." Cal. Civ. Code § 1798.150(a). There is no private right of action under any other subsection of the CCPA, *M.G. v. Therapymatch, Inc.,* 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024), and Plaintiff does not even attempt to satisfy the requirements for pleading a claim under § 1798.150(a).

The "personal information" enumerated in § 1798.81.5(d)(1)(A) is very limited. That statute defines "Personal Information" to mean only:

> (A) An individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted:
>
> (i) Social security number.
>
> (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document …
>
> (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
>
> (iv) Medical information.
>
> (v) Health insurance information.
>
> (vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual…
>
> (vii) Genetic data.

§ 1798.81.5(d)(1)(A). The SAC does not allege that Plaintiff provided, or that AliExpress or any Third-Party Trackers collected, any of these kinds of sensitive information for him (or anybody else). Indeed, the SAC cites California Civil Code § 1798.<u>140</u> for the definition of "personal information" (¶ 158), which is *the wrong statutory section* entirely. Cal. Civ. Code § 1798.150(a).[8] Allegations that AliExpress and the Third-Party Trackers collected "User Information," as defined in paragraph 9 of the SAC, simply do not state an actionable claim for relief under the plain language of the CCPA. Dismissal is required for this reason alone.

Consistent with its text and purpose, courts also routinely limit private claims under the

[8] Section 1798.150(a)(1) also permits a private right of action where an "email address in combination with a password or security question and answer that would permit access" was accessed and exfiltrated, stolen, or disclosed, but Mr. Abdullah does not allege that this occurred either.

CCPA to cases involving data security breaches – not mere data collection by websites and their commercial partners. *See Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1155 (N.D. Cal. 2024) (CCPA allows "a private right of action only in the event of a security breach"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (dismissing CCPA claim absent "allegations of a security breach"); *Kenney v. JPMorgan Chase Bank*, *N.A*, 2025 WL 2117415 at *8 (C.D. Cal. June 13, 2025) (same).[9] Plaintiff alleges no failure or security breach that exposed any information (much less information protected by the CCPA) to unauthorized disclosure, theft or exfiltration, warranting dismissal for this additional, independent reason.

And Plaintiff's CCPA claim fails for a third reason: he cannot allege that the disclosure he complains of occurred *as a result* of AliExpress's failure "to implement and maintain reasonable security measures." *Danfer-Klaben v. JPMorgan Chase Bank, N.A.*, 2022 WL 3012528, at *7 (C.D. Cal. Jan. 24, 2022) (dismissing CCPA claim). Here, Plaintiff alleges in conclusory fashion that his information was disclosed "as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices in violation of [the CCPA]." ¶ 166. But the disclosure he complains of is of non-sensitive information (public IP address and browsing data), and his cookie-cutter complaint fails to allege what, if anything, about AliExpress's security measures was "unreasonable" or deviated from any accepted standard of care in the industry. *See Kenney*, 2025 WL 2117415, at *8 (C.D. Cal. June 13, 2025) (dismissing claim where the plaintiff "vaguely allege[d] that [the defendant] 'unlawfully mishandled Plaintiff's personal and financial information'"). Plaintiff's CCPA claim should be dismissed.

**3. Plaintiff fails to state a claim for violation of the UCL (Count III)**

Plaintiff alleges that AliExpress's use of Third-Party Trackers is an unlawful, unfair, and fraudulent business practice under the UCL. ¶¶ 176–79. This claim, too, fails on multiple fronts.

*First*, Plaintiff fails to allege – as the UCL requires – that he "suffered injury in fact" *and* "lost money or property as a result." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 810 (N.D. Cal.

---

[9] While some courts in this district have allowed CCPA claims in the absence of a data breach, in those cases (unlike here) the information claimed to have been disclosed fell within the enumerated categories of personal information under § 1798.81.5(d)(1)(A). *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048-49 (N.D. Cal. Mar. 3, 2025) (bank account information); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024) (medical information).

2011). Standing under the UCL is "substantially narrower than federal standing under Article III." *Kwikset Corp.*, 51 Cal. 4th at 324. To have standing under California's UCL, Plaintiff must establish that he (1) suffered injury-in-fact and (2) lost money or property as a result of the unfair competition. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). The UCL's injury-in-fact standard is identical to the Article III standard, except that a plaintiff must specifically demonstrate *economic* injury – the UCL embraces "fewer kinds of injuries." *Kwikset*, 51 Cal. 4th at 322–24. A plaintiff's personal information is not property under the UCL, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014), and "[n]umerous courts [] have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information." *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023).

As discussed above, Plaintiff offers no "specific allegations regarding the value of" *his* information purportedly collected by the Third-Party trackers, and, indeed, fails even to articulate what it consisted of. This falls short of pleading injury-in-fact as required for standing under the UCL. *See supra* Section III(A)(b)(1). Plaintiff cannot simply allege that his personal information has some "external value" to AliExpress; he must allege facts showing it has economic value to *him*. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). Courts regularly dismiss UCL claims premised on collection of personal information for failure to meet this requirement. *See e.g., Lau*, 2023 WL 10553772, at *7 (dismissing UCL claim as plaintiffs did not plead that they attempted or intended to participate in the market for the information collected by the defendants); *Shah,* 768 F. Supp. 3d at 1048 (same). The Court should follow suit here.

*Second*, Plaintiff fails to plead or otherwise establish that, whatever harm he would seek to redress, he lacks an adequate remedy at law. *See Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of UCL claim where the complaint did not allege that the plaintiff lacked an adequate remedy at law). Of course, identifying an injury in the first place would be a necessary prerequisite for evaluating whether a legal remedy exists. But that does not excuse Plaintiff's failure to satisfy his pleading burden. *See Hoard v. Cap. One, N.A.*, 2024 WL 4611449, at *6 (S.D. Cal. Oct. 29, 2024) ("[I]n federal court, the 'plaintiff must, at a minimum, plead that

she lacks adequate remedies at law if [she] seeks equitable relief.'")

*Finally,* Mr. Abdullah's UCL claim is explicitly predicated on an alleged violation of the CCPA, ¶ 175(b), which that statute explicitly prohibits. Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law.").

**4. Plaintiff fails to state a claim for violation of CIPA (Count I)**

Plaintiffs' CIPA claim is legally deficient for the identical reason described in *Kishnani*:

> If [defendant] only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If [defendant] instead collects content information from communication between the parties (e.g., information provided from Plaintiff to [AliExpress] directly), then the [defendant's] software is not a trap and trace device and § 638.50 does not apply.

2025 WL 1745726, at *5 (dismissing with prejudice). AliExpress would also argue that dismissal is appropriate for substantially the same reasons that this Court disagreed with in *Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), and *Mirmalek v. Los Angeles Times Comm'cns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024). In light of those recent decisions, AliExpress preserves the argument that Plaintiff has not adequately alleged a statutory violation of CIPA as a result of the installation of a "pen register or trap and trace device," without burdening the Court with further briefing on these issues here. Critically, the lack of Article III standing was neither briefed nor ruled on in *Fregosa* or *Mirmalek*, and requires dismissal for the reasons stated above even if the Court finds a statutory violation of CIPA to be adequately alleged.

## IV. CONCLUSION

For all of these reasons, the Court should dismiss the entire SAC without leave to amend.

Dated: December 8, 2025

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Angela L. Dunning
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Tel: (650) 815-4100
Email: adunning@cgsh.com

Nowell D. Bamberger (*pro hac vice pending*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 974-1500
Email: nbamberger@cgsh.com

*Counsel for AliExpress E-Commerce One Pte., Ltd.*