CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
sblankenship@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650-815-4100
Facsimile: 650-815-4199

NOWELL D. BAMBERGER (*admitted pro hac vice*)
nbamberger@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

*Counsel for Defendant*
*AliExpress E-Commerce One Pte., Ltd*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSEPH ABDULLAH on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ALIEXPRESS E-COMMERCE ONE PTE., LTD,<br><br>Defendant. | Case No. 3:25-CV-05206 CRB<br><br>**DEFENDANT ALIEXPRESS E-COMMERCE ONE PTE., LTD'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Hearing Date: March 20, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6<br>Before: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

NOTICE OF MOTION ........ 1
SUMMARY OF ARGUMENT ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 2
I. INTRODUCTION ........ 2
II. BACKGROUND ........ 3
A. AliExpress and Its Alleged Use of Third-Party Tracking Tools ........ 3
B. Plaintiff's Limited Visits to the AliExpress Website ........ 3
C. Similar Actions by Plaintiff and His Counsel ........ 5
D. Plaintiff's Third Amended Complaint ........ 5
III. ARGUMENT ........ 6
A. Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) ........ 6
1. Legal standard ........ 6
2. Plaintiff lacks Article III standing ........ 7
a. Plaintiff fails to allege cognizable economic harm ........ 7
b. Plaintiff fails to allege invasion of a protected privacy interest ........ 9
c. Plaintiff fails to allege unjust enrichment ........ 13
B. Plaintiff's CIPA Claim Should Also Be Dismissed Under Rule 12(b)(6) ........ 15
1. Legal standard ........ 15
2. Plaintiff fails to state a claim for violation of CIPA ........ 15
IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................15

*Broomes v. FullBeauty Brands Ops., LLC*,
2025 WL 829589 (N.D. Cal. Jan. 31, 2025)....................14

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................10

*Californians for Disability Rts. v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006)....................2

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)....................1, 7, 9, 11

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004)....................6, 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)....................15

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025)....................1, 13, 14, 15

*F.T.C. v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994)....................14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................2, 8

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025)....................16

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025)....................14, 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................11, 13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................11, 15

*Hubbard v. Google*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................12

*I.C., v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ... *passim*

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ... 8, 11, 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ... 11, 16

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ... 8

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ... 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ... 7

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ... 9, 10

*Mirmalek v. Los Angeles Times Comm'cns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ... 16

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ... 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... *passim*

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ... 10

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ... 7

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ... 12

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ... 14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ... 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ... 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ... 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ... 6

*Thomas v. Papa John's Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd.* 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 12

*TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021) .......... *passim*

*Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 11

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 16

**Statutes**

Cal. Penal Code § 637.2 .......... 14

Cal. Penal Code § 638.51 .......... 1

**Court Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 6, 7

Fed. R. Civ. P. 12(b)(6) .......... 1, 15

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on March 20, 2026 at 10:00 a.m. in the above-captioned court, Defendant AliExpress E-Commerce One Pte. Ltd. will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff's Third Amended Complaint filed on January 9, 2026 (ECF No. 38) (the "TAC") with prejudice for lack of subject matter jurisdiction and failure to state a claim. This motion is based on the memorandum of points and authorities below, the accompanying Request to Consider Documents Incorporated by Reference and for Judicial Notice ("RJN") and Declaration of Angela J. Dunning ("Dunning Declaration") with exhibits thereto; all papers on file in this action; and such other matters as may be presented at the hearing.

## SUMMARY OF ARGUMENT

The Court should dismiss the TAC for lack of Article III standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rules") because Plaintiff fails to plead the requisite injury to support federal jurisdiction. Under *TransUnion, LLC v. Ramirez*, a statutory violation does not suffice to confer standing or jurisdiction absent a showing of concrete injury. 594 U.S. 413, 426 (2021); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (affirming dismissal of privacy claim for lack of Article III standing where plaintiff failed to allege a "concrete injury" to interests "traditionally recognized as providing a basis for lawsuits in American courts") (citing *TransUnion*, 594 U.S. at 425). Thus, numerous courts have dismissed claims under the California Invasion of Privacy Act, Cal. Penal Code § 638.51 ("CIPA"), for lack of Article III standing, even where a statutory violation is otherwise adequately pleaded. *See, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177 (N.D. Cal. 2025) (dismissing CIPA claim for lack of Article III standing); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (same); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3–5 (C.D. Cal. Dec. 29, 2025) (same).

Plaintiff fails to allege privacy or economic harms sufficient to confer standing as a matter of law. Plaintiff's asserted privacy injury is premised on the routine collection of internet users' basic information, such as IP addresses, browser and device type, URLs visited, session duration, click behavior, referring URLs, and geolocation based on IP addresses. The Ninth Circuit has expressly held that this type of non-sensitive metadata is not sufficiently "embarrassing, invasive,

or otherwise private" to satisfy the requirements for Article III standing. *Popa*, 153 F.4th 784, 791. Nor does Plaintiff allege that this type of information carries "independent economic value" to *him* as an "individual user," as required to establish the requisite concrete economic injury. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).

After multiple amendments, Plaintiff has demonstrated his inability to plead any concrete injury that would establish Article III standing. A fourth amendment would be futile, and the TAC should be dismissed with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Third Amended Complaint represents yet another failed attempt by Plaintiff to gin up class claims without any actual injury. It is precisely the type of suit California voters passed Proposition 64 to curtail – claims brought "as a means of generating attorneys' fees" where no one "has been injured in fact." *Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006). Despite this being Plaintiff's fourth attempt, he still fails to plead a cognizable injury to support an actionable CIPA claim.

In this case, Plaintiff Joseph Abdullah alleges that he accessed the AliExpress e-commerce website at least three times. Upon accessing the website in May 2025, he claims he ran sophisticated analytics to detect whether it uses common third-party digital tracking tools, including "cookies"—the use of which is conspicuously disclosed in AliExpress's Privacy Policy. In other words, Plaintiff's only visits to the AliExpress platform were not as a good faith user; they were calculated stops on the road to filing this lawsuit, which initially asserted claims for violation of CIPA as well as claims under the California Consumer Privacy Act and the California Unfair Competition Law.

After AliExpress moved to dismiss all claims for lack of Article III standing and failure to state a claim, Mr. Abdullah filed the fourth iteration of his complaint on January 9, 2026, dropping all claims save CIPA. But that claim still fails for lack of Article III standing because he does not identify any sensitive, private information that he purportedly provided or that AliExpress took. And courts have uniformly rejected CIPA claims premised on the collection and use of routine web-browsing and device metadata information of the sort alleged here. After four bites at the apple, it

is clear Mr. Abdullah cannot establish the concrete injury necessary to avail himself of the jurisdiction of this Court. The entire TAC should be dismissed with prejudice.

## II. BACKGROUND[1]

### A. AliExpress and Its Alleged Use of Third-Party Tracking Tools

AliExpress, accessible at www.aliexpress.us (the "Website"), is a leading online marketplace. ¶ 17. The Website serves as a digital storefront, allowing users to explore product listings, communicate with sellers, and complete purchases. ¶¶ 19–20. Like many e-commerce companies, AliExpress uses third-party tracking tools, including "cookies" and similar technologies, to improve users' experiences on the Website and to refine and track the success of its marketing strategies. AliExpress conspicuously discloses this commonplace practice in its Privacy Policy and Cookie Notice, both of which are publicly available. Dunning Decl., Exs. 1, 2.[2]

Plaintiff alleges that "[w]hen a user visits the Website, a suite of background tracking technologies[3] is activated immediately upon page load," the use of which allows AliExpress to track and analyze "user behavior at a highly granular level and to leverage that insight in real time for marketing optimization, user targeting, and business intelligence." ¶ 138. Plaintiff alleges that these tracking technologies, in general, collect Plaintiff's and Class Members' "Device Metadata" and "User Information" (¶ 69), alleged in the TAC to consist of "IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." ¶ 9.

### B. Plaintiff's Limited Visits to the AliExpress Website

Plaintiff alleges that he is a California resident and that he visited the Website "on at least three distinct dates," including on May 28, 2025, "at which time Plaintiff submitted sensitive

---

[1] Alleged facts are drawn from the TAC without agreement as to their accuracy. Citations to "¶" and "Ex." are to the paragraphs of the TAC and exhibits to the Dunning Declaration, respectively; all emphases are added; and internal citations and quotation marks are omitted.

[2] To the extent any putative class member's claims are governed by AliExpress's Terms of Use, as would be the case for any user who created an account, AliExpress reserves the right to seek compliance with the dispute resolution mechanisms therein, including compulsory arbitration.

[3] Plaintiff alleges that AliExpress uses seven different trackers operated by third parties: (1) Google Ads/Double Click; (2) Facebook Pixel; (3) Bing/Microsoft Ads; (4) Trade Desk; (5) Pinterest; (6) Rubicon; and (7) Taboola (the "Third-Party Trackers"). ¶ 8.

information on the Website in completing a purchase from the Website with his credit card." ¶ 15. The initial complaint identified this date as May 29 and alleged that he "submitted private information on the Website in order to complete a purchase from ALIEXPRESS with his credit card." Dkt. 1 at ¶ 16. But no version of his complaint has described what "sensitive" or "private" information he purportedly "submitted" on either date. For example, the complaint still does not allege that he opened or attempted to open an AliExpress account, allege that he entered any credit card or contact information, describe the nature of the "purchase" he allegedly initiated, or allege that any transaction was, in fact, completed. Nor does he allege that any such information was, or even could have been, tracked or collected by any Third-Party Trackers.

Instead, Plaintiff alleges only that during his Website visits, he viewed "multiple commercial pages displaying products available for purchase," which disclosed to Third-Party Trackers the "specific commercial pages Plaintiff viewed and the categories of products Plaintiff was browsing during the session," as well as information "reflecting when each page was loaded and the sequence of Plaintiff's browsing activity." ¶¶ 143–45. Plaintiff further alleges that the Third-Party Trackers would have been capable of using "unique identifiers, including analytics and advertising identifiers assigned to Plaintiff's browser," including Plaintiff's IP address, to infer his "general geographic location, such as the state or region from which Plaintiff accessed the Website." ¶¶ 146, 148. But Plaintiff still does not allege—even after AliExpress pointed out these conspicuous omissions in its motion to dismiss (Dkt. 31 at 4)—what device he used to access the Website, or whether that device or the unspecified "sensitive information" he submitted belonged to him personally. He does not allege that he suffered targeted advertising as a result of his visits to the Website or that any unidentified information collected was, in fact, used or misused. And the TAC still fails to identify any specific injury that Plaintiff claims to have suffered as a result of the conduct alleged.

Nevertheless, Plaintiff asserts a putative class claim against AliExpress on behalf of "All persons within California whose browser was subject to installation, execution, embedding, or injection of the Trackers by the Defendant's Website during the relevant statute of limitations period" (¶ 232), for violation of CIPA based on the alleged collection of IP addresses and other User Information of Class Members (¶¶ 238–41).

### C. Similar Actions by Plaintiff and His Counsel

Aside from generic allegations about accessing the AliExpress website and Plaintiff's name and county of residence, the TAC still alleges almost nothing about him. ¶ 15. Public court records confirm that Mr. Abdullah, represented by the same counsel, has filed at least two other lawsuits in this District asserting nearly identical claims. *See Abdullah v. The Hartford Ins. Group Inc.*, No. 25-6453 (N.D. Cal. filed July 31, 2025); *Abdullah v. Richemont N.A. Inc.*, No. 25-9144 (N.D. Cal. filed Oct. 23, 2025). He and his counsel have also filed scores of other California class action complaints over the last two decades.[4] And Plaintiff's counsel has recently flooded the courts with cookie-cutter claims against all sorts of companies on behalf of other repeat plaintiffs.[5]

### D. Plaintiff's Third Amended Complaint

Plaintiff's first three complaints alleged claims under CIPA, the California Consumer Privacy Act, and the California Unfair Competition Law. On December 8, 2025, AliExpress moved to dismiss Plaintiff's Second Amended Complaint. ECF No. 31. In lieu of responding to AliExpress's motion, Plaintiff sought consent to file the TAC, dropping all claims save CIPA.

Although it alleges fewer claims, the TAC is over twenty pages longer than its predecessor. But rather than adding specifics to address the deficiencies noted in AliExpress's motion, the TAC has been bulked up with generic and technical allegations concerning the technology and purpose of Third-Party Trackers and the information they are capable of collecting. But what the TAC still fails to do, and what Plaintiff apparently cannot do, is identify any sensitive information AliExpress is supposed to have received from him (via Third-Party Trackers or otherwise) or any actual injury he is supposed to have suffered as a result. These omissions are not oversights; AliExpress

---

[4] *See, e.g., Abdullah v. Coastal Ventures Ltd.*, No. 06-4783 (N.D. Cal. filed Aug 7, 2006); *Abdullah v. Bay Area Oil Supply*, No. 06-4784 (N.D. Cal. filed Aug. 7, 2006); *Abdullah v. Harman-Van Norman, Inc.*, No. 06-4785 (filed Aug. 7, 2006). Mr. Abdullah also appears as the named plaintiff in 39 actions in the Eastern District of California.

[5] *See, e.g., Tasker v. BMO Bank, N.A.*, No. 25-1304 (C.D. Cal. May 28, 2025); *Martines v. The Pep Boys*, No. 25-4643 (C.D. Cal. May 22, 2025); *White v. Esty, Inc.*, No. 25-5644 (N.D. Cal. July 3, 2025); *Martines v. Simple Tire LLC*, No. 25-06453 (C.D. Cal. July 22, 2025); *Arnold v. Rocket Cos.*, No. 25-1887 (C.D. Cal. July 23, 2025); *White v. Airbnb, Inc.*, No. 25-6464 (N.D. Cal. July 31, 2025); *Dawidzik v. Tesla*, No. 25-1982 (C.D. Cal. July 31, 2025); *Dawidzik v. Gen. Motors Co.*, No. 25-2069 (C.D. Cal. Aug. 8, 2025); *Arnold v. Poshmark, Inc.*, No. 25-6917 (N.D. Cal. Aug. 15 2024); *Tasker v. Disney*, No. 25-2368 (C.D. Cal. Sept. 9, 2025); *Tasker v. Nike, Inc.*, No. 25-2377 (C.D. Cal. Sept. 10, 2025); *Tasker v. Fiverr Inc.*, No. 25-2397 (C.D. Cal. Sept. 12, 2025).

identified these defects in its motion and stipulated to an amendment to permit Plaintiff to attempt to address them, and yet the holes remain. As the TAC now conclusively demonstrates, Plaintiff's complaint really amounts to nothing more than an objection that Third-Party Trackers collect IP addresses and general "User Information." For the reasons that follow, this still falls short of stating a cognizable claim.

## III. ARGUMENT

### A. Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

As discussed below, Mr. Abdullah's CIPA claim suffers from a number of pleading defects warranting dismissal under Rule 12(b)(6). The Court need not reach those defects, however, because, as a threshold matter, the TAC fails to allege the requisite injury in fact to confer Article III standing, necessitating dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

#### 1. Legal standard

Article III of the United States Constitution limits federal jurisdiction to "[actual] cases or controversies." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 122 (1998) (citation omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("courts have 'no business' deciding legal disputes ... in the absence of such a case or controversy"); Fed. R. Civ. P. 12(b)(1). To establish standing, a plaintiff must allege that: (1) he has suffered a concrete injury-in-fact; (2) the injury is fairly traceable to defendants' challenged conduct; and (3) the injury will likely be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Injury-in-fact means "an invasion of a legally protected interest" that is "concrete and particularized." *Id.* at 560. The injury must be "real, not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 352 (2016). The party invoking federal jurisdiction bears the burden of showing that it has standing. *TransUnion,*594 U.S. at 430–31. Absent standing, a suit should be dismissed under Rule 12(b)(1). *See Cetacean*, 386 F.3d at 1174 (collecting cases).

**2. Plaintiff lacks Article III standing**

The gist of Plaintiff's claims is that he ferreted out and identified purported technical violations of CIPA by AliExpress. This does not suffice to confer on him the requisite standing to pursue his claims in federal court. As the Supreme Court has repeatedly held, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC*, 594 U.S. at 414 (citing *Spokeo, Inc.*, 578 U.S. at 341). Instead, to satisfy Article III, a plaintiff must allege an actual injury to bring a claim in federal court, even if a statute would otherwise provide a cause of action. *Id.; Popa*, 153 F.4th at 792 (holding that plaintiff's allegations of a violation of a Pennsylvania privacy statute did not, alone, establish Article III standing). Accordingly, courts in this district regularly dismiss CIPA claims for failure to plead a concrete injury, irrespective of whether a statutory violation has been adequately alleged. *See e.g., Khamooshi*, 786 F. Supp. 3d at 1177 (dismissing CIPA claim for lack of Article III standing and rejecting argument that a violation of CIPA automatically constitutes a concrete injury); *Carolus*, 2025 WL 1338193, at *1 (same); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *6–7 (C.D. Cal. Dec. 15, 2025) (same).

Here, the TAC alleges that AliExpress's collection and monetization of User Information causes three purported injuries: (1) economic harm (¶ 90), (2) a "violation of a legally protected privacy interest that is both concrete and particularized" (¶ 32), and (3) unjust enrichment at users' expense (¶ 153). None suffices to confer Article III standing on Mr. Abdullah in this case.

**a. Plaintiff fails to allege cognizable economic harm**

The TAC is full of generalized allegations about how the internet and tracking technologies work, but is largely devoid of *specific* assertions about what happened *here*. Plaintiff's economic harm allegations conspicuously follow this pattern. He alleges that AliExpress's "monetization of personal data constitutes actionable economic harm ... as a 'misappropriation-like injury.'" ¶ 90. In support of this conclusory allegation, he asserts that certain categories of information (social security numbers, bank account records, contact information, birthdays, full web browsing histories, addresses) carry financial value. ¶¶ 84–87. But Plaintiff does not allege that he provided, or that AliExpress or the Third-Party Trackers collected, any of these types of information from

*him*. *Compare* ¶¶ 9, 38 (defining "User Information") *with* ¶¶ 84–85, 87 (alleging that *other* categories of data, *not* included in the definition of "User Information," are valuable). It is not enough for Plaintiff to allege theoretically that *some* kinds of personal information may have value; he was required to allege that *his* personal data allegedly disclosed or tracked by AliExpress or Third-Party Trackers carried "independent economic value" to *him* as an "individual user." *In re Facebook, Inc.*, 402 F. Supp. 3d at 784. The TAC still fails to satisfy this basic requirement.

The Complaint's deficiency is compounded by Plaintiffs' inability to allege that he was personally deprived of the value of any of his "User Information" allegedly collected and shared. He does not allege that he has ever attempted to, or would, sell any User Information, or that he is now foreclosed from doing so as a result of AliExpress's conduct. All he alleges is that AliExpress has benefited from its use of Third-Party Trackers (*see* ¶¶ 92–93), which does not suffice. *See Low v. LinkedIn Corp.*, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) (dismissing invasion of privacy claims for lack of Article III standing where plaintiff "failed to allege how he was foreclosed from capitalizing on the value of his personal data" as a result of defendant's collection); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014) (to plead Article III standing, Plaintiff "must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own"); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (no Article III standing for claims premised on collection of browsing history where plaintiffs did "not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of [defendant's] alleged conduct").

Two recent CIPA decisions from this district are directly on point. In *Khamooshi v. Politico*, plaintiffs similarly argued they suffered economic harm because their data collected by third-party trackers carried financial value. 2025 WL 2822879, at *4 (N.D. Cal. Oct. 2, 2025). Like Plaintiff does here, the *Khamooshi* plaintiffs pointed to studies offering to pay users to observe their web browsing behavior. *Id.*; *see* ¶ 85. Nonetheless, the *Khamooshi* court found that the existence of such studies—without allegations that the defendant's actions diminished plaintiffs' opportunity to get paid for such studies—was insufficient to establish Article III standing and dismissed plaintiffs' CIPA claim. 2025 WL 2822879, at *4. Likewise, in *Carolus*, the court

dismissed a CIPA claim based on tracking of IP addresses, browser and device data, and other identifying information for lack of Article III standing, reasoning that plaintiffs failed to plead "the potential monetary value of their IP addresses nor any theory for how (or to what degree) the value of that information decreases when [it is] track[ed]." 2025 WL 1338193, at *1.

Here, despite amending twice already, Plaintiff fails to allege—because he cannot—how collection of his IP address and URLs of Website pages he visited caused him economic injury. His allegations of unspecified economic harm fall woefully short of establishing Article III standing.

**b. Plaintiff fails to allege invasion of a protected privacy interest**

As a fallback, Plaintiff also alleges that the collection and use of his personal data by Third-Party Trackers constitutes "a violation of a legally protected privacy interest." ¶ 32. But this conclusory allegation likewise fails to plead a concrete injury under well-settled Supreme Court law.

Intangible harms, such as an invasion of privacy, are sufficiently concrete to support Article III standing only if they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 at 425; *see Popa*, 153 F.4th at 792 (holding that there is "no free-roaming privacy right at common law," and thus plaintiffs must plead an injury specific to a harm recognized in *TransUnion* to establish Article III standing). In the privacy context, courts assess "whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)). "To survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Id.* Courts then "must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *I.C., v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). "Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025).

Mr. Abdullah's allegations fail at the threshold. The TAC alleges that he "submitted sensitive information on the Website in completing a purchase from the Website with his credit

card." ¶ 15. But it still does not identify what this information purportedly consisted of, much less allege how it was "personal or sensitive" or whether it was improperly collected, disclosed or exfiltrated to Third-Party Trackers. Nor does Plaintiff allege that Third-Party Trackers are even capable of collecting credit card information or other identifying information submitted in connection with a purchase.[6] Therefore, Plaintiff's vague allegations surrounding his purchase on the Website—if, indeed, one was "completed," which remains unclear—cannot support a CIPA claim. *See Mikulsky*, 682 F. Supp. 3d at 864–65 (dismissing CIPA and privacy claims for lack of Article III standing where plaintiff merely alleged a disclosure of "personal information"); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim on Article III grounds for failure to identify the personal information disclosed).

What remains is Plaintiff's allegation that the Third-Party Trackers collect "User Information"—specifically, "IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." ¶ 9. But collection of this information is likewise insufficient as a matter of law to give rise to a concrete injury. To be actionable, an alleged privacy violation must bear a "close relationship" to a "harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," that is, the information collected must be "personal and private." *Popa*, 153 F.4th at 780 (citing *TransUnion*, 594 U.S. at 432) (internal quotations omitted). And a concrete injury only arises where disclosure of such information would be "highly offensive to a reasonable person." *Khamooshi*, 786 F. Supp. 3d at 1180 (citing *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 966 (9th Cir. 2023)). This is a high bar; even "disclosure of highly personal information such as social security numbers" may not be "highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). Plaintiff comes nowhere close to clearing this bar.

[6] Plaintiff's allegation that the Third-Party Trackers are "designed to capture" "information such as [] phone number, email," ¶ 240, is at odds with his more specific description of what information each Third-Party tracker actually collects, which does not include this data. *See e.g.*, ¶¶ 9, 98, 159. Notably, the TAC never alleges that Plaintiff provided his phone number or email or that this information was otherwise collected from him.

First, the Third-Party Trackers' alleged collection of Plaintiff's IP address cannot constitute a concrete privacy injury.[7] "When internet users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process." *Khamooshi*, 786 F. Supp. 3d at 1179; *see also* ¶ 51 (an IP address is "indispensable" to "efficient connection over the Internet"). As such, it is well settled that "internet users have no expectation of privacy in ... IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Indeed, the "cases are legion holding that a person does not have a legitimate expectation of privacy in an IP address." *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025); *see Khamooshi*, 786 F. Supp. 3d at 1180 ("IP addresses are information about an address associated with a device, not sensitive personal information"); *Heeger*, 509 F. Supp. 3d at 1189–90 (finding no Article III standing for collection of IP addresses); *Carolus*, 2025 WL 1338193, at *1 (same).

Second, Plaintiff's allegations regarding collection of his geographic location through his IP address ("such as the state or region from which Plaintiff accessed the website" (¶ 148)) are not actionable either. Courts routinely reject such allegations as incapable of supporting a claim. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (dismissing CIPA claim as plaintiff "has no expectation of privacy" in his "IP address or general geographic location"); *Khamooshi*, 2025 WL 2822879, at *3 (dismissing CIPA claim with prejudice for failure to allege a "concrete privacy injury" despite allegations that "geolocation information" was collected). Notably, the allegations here are even more deficient, as the TAC still does not allege (as noted in AliExpress's prior motion) that Plaintiff used his own device or IP address to access the Website, rather than that of his lawyer or another third party, in which he would have no privacy interest at all.

---

[7] Plaintiff alleges that IP addresses, when collected with Device Metadata and User information, serve to "deanonymize" Plaintiff. However, "[t]he fact that IP addresses can de-anonymize sensitive personal information does not mean that IP addresses themselves constitute sensitive personal information." *Khamooshi*, 786 F. Supp. 3d at 1180 n.4.

Third, Plaintiff's allegations that the Third-Party Trackers collect other types of "User Information," such as "browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs)" (¶ 9), likewise cannot establish a concrete privacy injury. Courts in this Circuit have repeatedly held that the collection of this type of innocuous browser tracking information is routine and often *anticipated* by internet users, such that users do not have a reasonable expectation of privacy in this information. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024), *aff'd.* 2025 WL 1704437 (9th Cir. June 18, 2025) (no reasonable expectation of privacy over mouse movements, clicks, keystrokes, and URLs of web pages visited); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (no reasonable expectation of privacy in mouse movements, clicks, keystrokes, keywords, URLs, product preferences, interactions on a website, user/device identifiers, or website browsing activities).

Likewise, in *Hubbard v. Google LLC*, the court dismissed privacy claims premised on use of cookies to collect browsing information such as "the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information." 2024 WL 3302066, at *2, 7 (N.D. Cal. July 1, 2024). Describing the "collection and sale of such data" as "commonplace" and "routine," the court found that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much.*" *Id.* at *7 (emphasis in original).

And the Ninth Circuit's 2025 decision in *Popa* sounded the final death knell for any privacy claim premised on the kinds of User Information allegedly collected by AliExpress. In *Popa*, the plaintiff alleged that the defendant collected over 30 categories of user information, including device and browser information, "'mouse movements, clicks, keystrokes . . ., URLs of web pages visited, and/or other electronic communications in real-time.'" 153 F.4th at 786. The Ninth Circuit held that such information is not "embarrassing, invasive, or otherwise private information" and does not give rise to Article III standing, comparing the website's collection of this data to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791. The court further held that, even if this information was private, its

disclosure was not "highly offensive." *Id.* at 791 ("[Plaintiff] does not explain how the tracking of her interactions with [the defendant's] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."). Accordingly, the Ninth Circuit affirmed dismissal for lack of Article III standing. *Popa*, 153 F.4th at 794–95; *see also Hammerling*, 615 F. Supp. 3d at 1090 ("routine commercial behavior" of collecting web data is "not a 'highly offensive' intrusion of privacy").

Here, the information Mr. Abdullah alleges was collected by the Third-Party Trackers is a subset of the 30 categories of information found incapable of supporting a claim in *Popa* and should meet the same fate—dismissal. *See Dawidzik*, 2025 WL 3786963, at *1, 5 (dismissing CIPA claim premised on collection of the same information alleged by Plaintiff here[8] for lack of Article III standing because the categories of information were "similar to those rejected in *Popa*"); *Khamooshi*, 2025 WL 2822879, at *3 (dismissing CIPA claim where "[p]laintiffs' allegations regarding device type, browser type, and "device fingerprints" are even less specific than the 30 different categories of information alleged in *Popa*¸ which also included the device type, browser type, and metadata akin to fingerprinting").

**c. Plaintiff fails to allege unjust enrichment**

Alternatively, Plaintiff argues that he suffered harm because AliExpress was unjustly enriched through use of his data. ¶ 153. But Plaintiff does not actually plead a claim for unjust enrichment. Plaintiff's sole claim is under CIPA – a statute that permits recovery of statutory and actual "damages." Cal. Penal Code § 637.2. A plaintiff must "demonstrate standing separately for each form of relief sought." *TransUnion*, 594 U.S. at 436 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). Therefore, Plaintiff cannot establish standing for his CIPA damages claim by pointing to alleged unjust enrichment, which permits only

[8] *Dawidzik* was filed by the same law firm that represents Plaintiff here and alleged collection of precisely the same type of "User Information" ("IP addresses, browser and device type, screen resolution, installed fonts, color depth, time zone, operating system, pages visited, session duration, scroll depth and/or mouse movement, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP").

equitable relief. *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) ("The remedy of restitution seeks to correct unjust enrichment.").[9]

In keeping with these basic tenets, courts have in this district and elsewhere have repeatedly rejected efforts to bootstrap standing for a CIPA claim by pointing to alleged unjust enrichment. *See Dawidzik*, 2025 WL 3786963, at *5, 6 n.4 (rejecting unjust enrichment as a basis for Article III standing and dismissing CIPA claim where, as here, plaintiff did not plead an unjust enrichment claim, and reasoning: "even had Plaintiff sufficiently shown their injury was similar to unjust enrichment, Plaintiff's standing would be limited to seeking restitution rather than damages"); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, *6-7 (S.D.N.Y. Feb. 18, 2025) (dismissing CIPA claim and rejecting attempt to establish Article III standing based on a theory of unjust enrichment).

Even were it otherwise, Plaintiff would still have needed to plead the elements of unjust enrichment in order to demonstrate that the relief sought here bears a "close relationship" to that which was available at common law. *TransUnion*, 594 U.S. at 424. He cannot. He has pleaded no facts to establish that AliExpress's alleged collection of ordinary-course website data was "unjust" or that AliExpress was in any way "unjustly enriched." *Khamooshi*, 786 F. Supp. 3d at 1182–83. The enrichment of a defendant is only unjust when "conferred . . . through mistake, fraud, coercion, or request." *Dawidzik*, 2025 WL 3786963, at *5 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)) (internal quotations omitted). That is not alleged here. Moreover, in analogous CIPA cases regarding internet data collection, courts look to the nature of the underlying information to gauge whether its collection can be considered unjust and routinely find that it is not. *See e.g., Gabrielli*, 2025 WL 522515, at *7 (holding that "the nature of the information contained in [plaintiff's] IP address does not implicate a legally protected privacy interest … [a]ccordingly, [plaintiff] fails to allege a concrete injury based on the argument that that

[9] "For a district court to have equitable jurisdiction, the plaintiff must have no adequate legal remedy." *Broomes v. FullBeauty Brands Operations, LLC*, 2025 WL 829589, at *3 (N.D. Cal. Jan. 31, 2025); *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (same). Plaintiff does not allege that he lacks a legal remedy; to the contrary, he seeks damages under CIPA. Thus, Plaintiff also cannot establish this Court's jurisdiction for an unjust enrichment claim, which is presumably why he did not assert one. *See Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025) (dismissing unjust enrichment claim based on defendant's use of internet tracking technology as plaintiffs "failed to allege that they lack an adequate remedy at law").

Insider has been unjustly enriched at his expense"); *Khamooshi*, 786 F. Supp. 3d at 1183 (finding the disclosure of IP addresses not "unjust" because such information "is so commonly shared across the internet that it cannot reasonably be considered private" (citing *Heeger*, 509 F. Supp. 3d at 1189)). Plaintiff does not have a legally protected privacy interest in any of the information allegedly collected by the Third-Party Trackers, and therefore cannot establish unjust enrichment, much less rely on unjust enrichment to support Article III standing for his CIPA claim.

**B. Plaintiff's CIPA Claim Should Also Be Dismissed Under Rule 12(b)(6)**

Dismissal is appropriate for the additional reason that the TAC fails to allege facts sufficient to state a claim under Fed. R. Civ. P. 12(b)(6).

**1. Legal standard**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support" one. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive dismissal, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Pleading facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 550 US. 662, 678 (2009) (cleaned up). Leave to amend should be denied where the failure to cure pleading defects is a "strong indication that the plaintiffs have no additional facts to plead" and amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

**2. Plaintiff fails to state a claim for violation of CIPA**

Plaintiff's CIPA claim is legally deficient for the identical reason described in *Kishnani*:

> If [defendant] only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If [defendant] instead collects content information from communication between the parties (e.g., information provided from Plaintiff to [AliExpress] directly), then the [defendant's] software is not a trap and trace device and § 638.50 does not apply.

2025 WL 1745726, at *5 (dismissing with prejudice). Either way, liability cannot attach.

AliExpress would also argue that dismissal is appropriate for substantially the same reasons that this Court disagreed with in *Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), and *Mirmalek v. Los Angeles Times Comm'cns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024). In light of those recent decisions, AliExpress respectfully preserves the argument that Plaintiff has not adequately alleged a statutory violation of CIPA as a result of the installation of a "pen register or trap and trace device," without burdening the Court with further briefing on these issues here. Critically, however, the lack of Article III standing was neither briefed nor ruled on in *Fregosa* or *Mirmalek*, and requires dismissal for the reasons stated above even if the Court finds a statutory violation of CIPA to be adequately alleged.

## IV. CONCLUSION

Plaintiff has now filed four different versions of his complaint, this most recent with the benefit of AliExpress's motion to dismiss, and he still cannot muster the basic factual allegations necessary to establish Article III standing for his remaining CIPA claim. For this and the other reasons stated above, further amendment would be futile and the Court should dismiss the TAC with prejudice.

Dated: January 30, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Angela L. Dunning

Angela L. Dunning (212047)
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: (650) 815-4100
Email: adunning@cgsh.com

Nowell D. Bamberger (*admitted pro hac vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 974-1500
Email: nbamberger@cgsh.com

*Counsel for AliExpress E-Commerce One Pte., Ltd.*