**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Daniel S. Guerra (SBN 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
40729 Village Dr., Suite 8 – 1989
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH ABDULLAH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALIEXPRESS E-COMMERCE ONE PTE., LTD.,<br><br>Defendant. | Case No. 3:25-cv-05206-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. Charles R. Breyer |

## TABLE OF CONTENTS

PAGE(S)


I. SUMMARY OF ARGUMENT ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Plaintiff Has Article III Standing ........ 4

1. Defendant's Installation And Use Of The Trackers Facilitated the Profiling Of Plaintiff For Advertising ........ 4

2. Plaintiff Alleges Concrete Economic Injury ........ 6

3. Unjust Enrichment Corroborates Concreteness ........ 7

4. Defendant's Arguments and Authorities Are Distinguishable and Unpersuasive ........ 9

B. Plaintiff States a Claim Under Section 638.51 ........ 11

1. The Statutory Text Forecloses Defendant's "Metadata Catch-22" ........ 11

2. The TAC Adequately Alleges Each Element ........ 12

C. Defendant's Factual Arguments Are Improper at the Pleading Stage ........ 13

D. Dismissal with Prejudice Is Unwarranted ........ 13

V. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 3

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ... 5, 9

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ... 7

*Committee for Responsible School Expansion v. Hermosa Beach City School Dist.*,
142 Cal.App.4th 1178 (2006) ... 11

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ... 10

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ... 9

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ... 5, 6

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ... 5

*Dellasala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ... 9

*Dept. of Justice v. Reporters Committee for Freedom of Press*,
489 U.S. 749 (1989) ... 5

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ... 5

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ... 10, 11, 12

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ... 10

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ... 5

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .................... 5, 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................... 12

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .................... 5

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) .................... 10

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) .................... 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 4

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................... 7

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. 2023) .................... 12

*Khamooshi et al. v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .................... 10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .................... 10

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .................... 2, 9, 10, 11

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .................... 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................... 3

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .................... 6

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) .................... 13

*Moody v. C2 Educ. Sys., Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .................... 11

*Munoz v. Super. Ct. of L.A. Cnty.*,
91 F.4th 977, 981 (9th Cir. 2024) .................... 13

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 8

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .......... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 1, 2, 9, 10

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 7, 8

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .......... 3, 13

**STATUTES**

Cal. Pen. Code § 638.50(b) .......... 11

Cal. Pen. Code § 638.51 .......... 1, 2, 13

**RULES**

Fed. R. Civ. P. 15(a) .......... 13

## I. SUMMARY OF ARGUMENT

Defendant AliExpress E-Commerce One PTE., LTD. ("Defendant" or "AliExpress") embedded seven third-party tracking technologies on its e-commerce website, each operated by a separate commercial entity with independent commercial interests. Each functions as a pen register or trap-and-trace device under the California Invasion of Privacy Act ("CIPA"), California Penal Code § 638.51, capturing addressing and signaling information and transmitting it to third-party servers without Plaintiff Joseph Abdullah's ("Plaintiff") consent or a court order. Defendant moves to dismiss, arguing that Plaintiff lacks Article III standing because the captured data is too "routine" to constitute a concrete injury.

The standing framework is not in dispute. Under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), a plaintiff must show that the alleged harm bears a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit." The Ninth Circuit applied that framework in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), and dismissed for lack of Article III standing where a single website operator's collection of its own visitors' browsing metadata—device type, browser type, and mouse movements—did not clear the bar. *Id.* at 786-87, 791. The court compared the conduct to "a store clerk[] observing shoppers" and held that the plaintiff had identified no "embarrassing, invasive, or otherwise private information collected[.]" *Id.* at 791.

This case crosses the *Popa* baseline. The Third Amended Complaint ("TAC") does not allege that a website operator observed its own visitors' activity. It alleges that AliExpress secretly installed seven independent surveillance devices that diverted Plaintiff's browsing and purchasing data to seven separate commercial entities, including Google, Meta, Microsoft, The Trade Desk, Pinterest, Rubicon/Magnite, and Taboola, each with its own business interests in that data. One of those entities, Taboola, is a registered California data broker. The data was integrated into real-time bidding auctions, cookie synchronization, and identity resolution markets. And the surveillance occurred during a credit card purchase on an e-commerce website, not during passive browsing on a news site or pet supply store.

In *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026), Judge Illston denied a motion to dismiss Section 638.51, intrusion upon seclusion, Section 631, and federal ECPA claims in a case with parallel facts, recognizing that *Popa* "did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Id.* at *3 n.5. The court distinguished *Popa* because, "[u]nlike in *Popa*, which involved non-sensitive browsing activity on a single pet supply website," the plaintiffs alleged that the defendant "created or added to detailed user profiles by tracking their interactions across the internet." *Id.* The court found this "more akin to *In re Facebook*," where the defendant allegedly "gained a cradle-to-grave profile without users' consent." *Id*. The same distinction applies here. The Court should deny Defendant's Motion to Dismiss ("Mot.").

## II. FACTUAL BACKGROUND

Plaintiff Joseph Abdullah ("Plaintiff") visited AliExpress's e-commerce website and, on May 28, 2025, made a purchase using a credit card. TAC ¶ 15. AliExpress had embedded seven third-party tracking technologies on its website, each operated by a separate commercial entity: Google Ads/DoubleClick, Facebook/Meta Pixel, Microsoft/Bing Ads, The Trade Desk, Pinterest, Rubicon Project/Magnite, and Taboola (collectively, the "Third Parties"). TAC ¶¶ 6, 154-231.

Each tracker operates as a "device or process" within the meaning of Section 638.50(b): when a user loads AliExpress's website, the trackers execute automatically, initiate outbound network connections to third-party servers, transmit the user's IP address, place persistent tracking cookies on the user's browser, and relay addressing and signaling information, including page URLs, timestamps, referrer data, device metadata, and persistent identifiers such as _ga, _gid, _gcl_au, _fbp, and t_pt_gid cookies, without user consent or court order. TAC ¶¶ 154-231. This occurs before the user has any opportunity to interact with any consent mechanism. TAC ¶¶ 163, 173, 182, 195, 207, 219, 230.

The TAC is corroborated by forensic evidence at both the browser and network levels. DevTools network captures show each tracker initiating HTTP requests to third-party servers on page load. TAC Figs. 9, 13, 16, 18, 20-21, 23. Packet-level Wireshark captures confirm DNS resolution to tracker domains within seconds of the initial page request, before any user interaction.

TAC Figs. 10, 14, 17, 19, 22. Cookie storage screenshots document persistent identifiers placed in the browser without affirmative consent. TAC Figs. 11, 12, 15, 24.

One of the seven trackers, Taboola, is a registered California data broker under Civil Code § 1798.99.80 *et seq*. TAC ¶¶ 100, 227. Taboola's core business is the commercial aggregation, correlation, and resale of consumer data for targeted advertising. The data captured from Plaintiff's browsing and purchasing activity was transmitted to Taboola and the other six tracker operators for real-time bidding auctions, cookie synchronization, identity resolution, and lookalike audience creation within the programmatic advertising ecosystem. TAC ¶¶ 109-142, 227-230; *see generally id*. ¶¶ 154-231.

The persistent identifiers placed on Plaintiff's browser, including _ga, _fbp, and t_pt_gid cookies, enable cross-site tracking that extends beyond the AliExpress session. TAC ¶¶ 162, 172, 229; *see generally id*. ¶¶ 154-231. These identifiers allow the tracker operators to follow Plaintiff across other websites, compile longitudinal behavioral profiles, and link his browsing history to a persistent identity. TAC ¶¶ 109-142.

## III. LEGAL STANDARD

Defendant brings a facial attack on subject matter jurisdiction under Rule 12(b)(1) and moves to dismiss for failure to state a claim under Rule 12(b)(6). On a facial challenge to standing, the Court accepts the plaintiff's "allegations to be true and draw[s] all reasonable inferences in his favor" to determine whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024). Further, the Court in *Lujan v. Defs. of Wildlife* stated, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" 504 U.S. 555, 561 (1992).

Under Rule 12(b)(6), a complaint survives if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# IV. ARGUMENT

## A. Plaintiff Has Article III Standing

### 1. <u>Defendant's Installation And Use Of The Trackers Facilitated the Profiling Of Plaintiff For Advertising</u>

Plaintiff alleges that, through the information the Third Parties collect, he was identified by being linked to comprehensive, non-anonymous profiles maintained by data brokers that contain "sensitive demographic information"; that such linkage occurs by bypassing the normal "restriction that sites can't read each other[s'] cookies"; and that those profiles are offered up for sale to advertisers without knowledge or consent. *See, e.g.*, TAC ¶¶ 6-9, 11, 38-40, 62-63, 69, 71-72, 74-75, 98, 103, 110-112, 127-128, 134, 136, 143-149.

Here, seven separate commercial entities with independent business interests received Plaintiff's data in real time. TAC ¶¶ 154-231. One of those entities, Taboola, is a registered California data broker under Civil Code § 1798.99.80 *et seq*. TAC ¶ 100, 227. Taboola's core business is commercial data aggregation and resale. The transmission of Plaintiff's data to a registered data broker transforms the collection from routine first-party analytics into third-party commercial surveillance. Further, the trackers place persistent identifiers on Plaintiff's browser, including  ga, _fbp, and t_pt_gid cookies, thereby enabling cross-site tracking that extends beyond the AliExpress session. TAC ¶¶ 157, 168, 223. The surveillance at issue also occurred during a credit card purchase on an e-commerce website, enabling the capture of purchasing behavior that reveals economic choices alongside browsing behavior and consumer identity. TAC ¶ 15. This captured data was integrated into programmatic advertising infrastructure: real-time bidding auctions, cookie synchronization, identity resolution, and lookalike audience modeling. TAC ¶¶ 109-142. These are markets where consumer data is bought, sold, and used to construct profiles of the kind the Ninth Circuit found sufficient to Establish Article III standing in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

These "allegations likely satisfy Article III's injury requirement" "because the privacy violation … encompasses how that collection [of Plaintiff's information] allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his

ability to remain anonymous." *Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025); *see also, e.g.*, *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("Deivaprakash alleges that internet trackers allowed third parties to generate profiles reflecting his personal information. That privacy injury finds historical analogues in injuries redressable under the common law."); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (Article III standing where plaintiffs "alleged that they were subject to these profile-building practices"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("Plaintiffs have alleged that the Trackers on Defendant's website have collected a broad set of their personal identifying and addressing information without their consent[.] … This claim maintains a violation of privacy, particularly in the control of their own information.").

In this way, Plaintiff lost his right to "control [] information concerning his … person," which is encompassed within "both the common law and the literal understandings of privacy[.]" *Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989). This is at least analogous to an intrusion upon seclusion, although an exact match is not required. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up); *Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026) ("The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms—*i.e.*, the loss of the ability to control information about himself and to avoid the broad dissemination of that information."); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025) ("[T]he Court concludes the better reading of *TransUnion* is that harms need only be similar in kind to those redressed by common law torts.").

Moreover, Plaintiff's harm is traceable to Defendant's conduct. Defendant "enabled the third parties to amass information about [Plaintiff] by embedding the code in its website[] that surreptitiously installed the trackers on [Plaintiff's] browser in the first place." *Deivaprakash*, 798 F. Supp. 3d at 1107; *see, e.g.*, TAC ¶¶ 6, 35-36, 63, 81, 144-145, 148. Indeed, the Third Parties' tracking was done at Defendant's direction and for Defendant's financial benefit. *See, e.g., id*. ¶¶ 90, 92, 98, 150-153. And the harm that befell Plaintiff here occurred directly on Defendant's Website. *See, e.g., id*. ¶ 15 ("The allegations set forth herein are based on the Website as configured when Plaintiff visited it."). Defendant's "knowing participation in this scheme … is enough to confer standing for a victim of the scheme to sue [Defendant] in federal court." *McClung v. AddShopper, Inc*., 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024).

**2. Plaintiff Alleges Concrete Economic Injury**

The unauthorized surveillance also caused Plaintiff concrete economic harm, which independently establishes the concreteness of his injury. The economic deprivation has two components, both of which the TAC pleads.

*The data had independent economic value.* The TAC alleges that Plaintiff's browsing and transactional data was transmitted to seven tracker operators and integrated into programmatic advertising markets, including real-time bidding auctions, cookie synchronization, and identity resolution, where consumer behavioral data is bought and sold as a commodity. TAC ¶¶ 109-142. Taboola is a registered California data broker under Civil Code § 1798.99.80 *et seq*. TAC ¶¶ 100, 227. Registration under that statute is a statutory acknowledgment that Taboola commercially trades in consumer data. At the pleading stage, these allegations suffice to establish that Plaintiff's data had independent economic value.

*Plaintiff was concretely deprived of that value.* Plaintiff made a credit card purchase on Defendant's website. TAC ¶ 15. He paid full retail price for merchandise. Simultaneously and without his knowledge, seven tracker operators extracted his browsing and transactional data as additional, unbargained-for consideration. TAC ¶¶ 154-231. He did not consent to the data transfer, was not informed of it at the point of transaction, and received no consideration for it. The injury is not that Defendant profited—it is that Plaintiff surrendered monetizable data as an undisclosed

cost of a commercial transaction. That deprivation distinguishes this case from those where courts found only that a defendant collected data and profited, without any corresponding loss to the plaintiff.

The cases dismissing economic injury claims post-*Popa* confirm this two-sided test and are distinguishable on the facts. In *Khamooshi v. Politico LLC*, the court found the data collected was "even less specific than the 30 different categories of information alleged in *Popa*," 2025 WL 2822879 at *3 (N.D. Cal. Oct. 2, 2025), and involved a single news website with no data broker, no cross-site tracking, and no commercial transaction. In *Carolus v. Nexstar Media Inc.*, the court noted that "most of the plaintiffs' cited cases that found a privacy injury involved disclosure of several types of personal information all linked together, not just IP addresses." 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025). Both courts found no factual basis for concluding the plaintiff's data had been commercially exploited by entities with independent business interests during an active consumer transaction. Here, the TAC alleges precisely that: seven independent entities extracted Plaintiff's data during a credit card purchase, transmitted it to a registered data broker, and fed it into markets where it was commercially monetized. TAC ¶¶ 15, 109-142, 154-231.

Defendant's reliance on *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), for the proposition that Plaintiff must plead the precise "independent economic value" of his data misstates the pleading burden. *TransUnion* and *Spokeo* require a concrete injury, not a quantified valuation. *See TransUnion*, 594 U.S. 413; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The TAC's allegations that a registered data broker received and commercially monetized Plaintiff's data in programmatic advertising markets sufficiently plead both value and deprivation at the pleading stage.

**3. <u>Unjust Enrichment Corroborates Concreteness</u>**

Plaintiff does not rely on unjust enrichment as an independent basis for standing. The primary injury is the unauthorized surveillance itself—the intrusion upon Plaintiff's seclusion through seven simultaneous surveillance operations during a commercial transaction—coupled with the dissemination of Plaintiff's information. Unjust enrichment corroborates that injury: AliExpress and the Third Parties extracted commercial value from Plaintiff's data without

authorization, transforming Plaintiff's visit into a monetization event he neither consented to nor shared in.

When unauthorized surveillance generates commercial profit at the surveilled party's expense, the enrichment confirms that the invasion produced real economic consequences. *TransUnion* recognizes that "monetary harms" among the "traditional tangible harms" are "concrete injuries" that support Article III standing. *TransUnion*, 594 U.S. at 425. The unauthorized taking, dissemination, and monetization of Plaintiff's data maps onto restitution and unjust enrichment at common law.

Defendant's argument that unjust enrichment sounds in restitution and is therefore unavailable because Section 637.2 permits only "damages" (Mot. at 13-14) conflates the standing inquiry with the remedial inquiry. Whether Plaintiff may ultimately obtain restitution as a remedy is a merits question about the scope of Section 637.2. It has nothing to do with whether Plaintiff has suffered a concrete injury. A plaintiff who alleges that a defendant was unjustly enriched by an unauthorized taking of his data has alleged a concrete injury regardless of the ultimate form of relief.

Moreover, to the extent Plaintiff seeks injunctive relief to prevent the ongoing unauthorized installation and operation of these surveillance devices, unjust enrichment independently supports standing for equitable relief. A plaintiff seeking an injunction must show a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). The TAC alleges that the trackers continue to operate on AliExpress's website and that Defendant continues to profit from the unauthorized extraction and commercial exploitation of visitor data. TAC ¶¶ 109-142. The ongoing operation of the trackers and Defendants' continued monetization of Plaintiff's and class members' data show a real and immediate threat that the same intrusion and economic harm will recur, supporting Plaintiff's standing to seek prospective equitable relief, regardless of whether his legal remedy under Section 637.2 is limited to damages.

//

//

//

### 4. Defendant's Arguments and Authorities Are Distinguishable and Unpersuasive

Defendant relies on *Popa*, 153 F.4th 784. But "*Popa* did not set forth a new rule of law[.]" *Dellasala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025); *Camplisson*, 2025 WL 3228949, at *6 ("Rather than introducing new case law … *Popa* uses the same common law rules … and evaluates the specific facts of that case."); *Krzyzek*, 2026 WL 206855 at *3 n.5 (*Popa* "did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case."). Moreover, "[t]he scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in" *Popa*. *Gilligan*, 2026 WL 32259, at *2. *Popa* involved "the tracking of plaintiff's non-sensitive interactions with a single website[.]" *Id*. Moreover, the information recorded in *Popa* was anonymous because the website had configured the third party software to exclude the user's "street number and zip code." *Popa*, 153 F.4th at 787. In addition, the only use of the information in *Popa* was to tell websites "which elements … have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website." *Popa*, 153 F.4th at 786 (cleaned up).

So, *Popa* boiled down to a third party collecting anonymous information that was used in a manner akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems." *Id*. at 791. Unlike here, there was no linkage of information to non-anonymous profiles, no sale of that information to advertisers, and no loss of control of personal information because personal information was not captured in *Popa*. *See Camplisson*, 2025 WL 3228949, at *6 ("[*Popa*] is distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases."); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) ("[T]he alleged information at issue here is beyond what would be observable to a store clerk tasked with monitoring shoppers."); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026) (finding "plaintiffs have adequately pled a 'highly offensive' intrusion of privacy that invades a reasonable internet user's expectation of

privacy sufficient to establish standing[]" by alleging that defendant "created or added to detailed user profiles by tracking their interactions across the internet, and that this tracking remains ongoing."); *Hassid v. Alex & Ani, LLC*, 2026 WL 160535, at *3 (C.D. Cal. Jan. 20, 2026) (collecting cases and finding Article III standing in analogous circumstances).

Defendant's other authorities are also distinguishable. *Khamooshi* and *Carolus* were post-*Popa* dismissals based on standing. But both cases are distinguishable because they involved single trackers on news websites collecting routine device metadata, with no data brokers, no cross-site tracking, no e-commerce transactions, and no real-time bidding ("RTB") integration. *Khamooshi* found the data collected was "even less specific than the 30 different categories of information alleged in *Popa*." *Khamooshi*, 2025 WL 2822879, at *3. In *Kishnani v. Royal Caribbean Cruises Ltd.*, the Court dismissed a Section 638.51 claim with prejudice, holding that the TikTok tracking software at issue could not function as a trap-and-trace device. 2025 WL 1745726, at *4-5 (N.D. Cal. June 24, 2025). But *Kishnani* involved a single social-media fingerprinting tracker collecting device and browser metadata on a cruise line website. It did not address the multi-tracker, multi-entity surveillance architecture alleged here, and its categorical holding about TikTok fingerprinting technology does not extend to the seven distinct tracking technologies at issue in this case. To the extent *Kishnani* suggests that non-content metadata categorically cannot support a Section 638.51 claim, multiple courts, including this one, have rejected that framework. *See Fregosa v. Mashable, Inc.*, 2025 WL 2886399 at *6 (N.D. Cal. Oct. 9, 2025) (Breyer, J.); *Krzyzek*, 2026 WL 206855 at *9 ("Numerous courts in this district and elsewhere have already found pixels to be 'pen registers' at the pleading stage[.]").

In *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025), plaintiff pled three tracking pixels with no registered data broker, no RTB marketplace, and no consumer financial transaction. *Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025), was decided outside this circuit and involved a single tracker collecting only an IP address on a news site. Neither case confronted the factual posture alleged here.

//

//

### B. Plaintiff States a Claim Under Section 638.51

#### 1. The Statutory Text Forecloses Defendant's "Metadata Catch-22"

Defendant contends that if a device collects only metadata, there is no privacy invasion and no standing; and if it collects content, it is not a pen register; and that, either way, the claim fails. Mot. at 16. This argument, if accepted, would render Section 638.51 dead letter.

A pen register is defined by statute as a device that captures "dialing, routing, addressing, or signaling information" while excluding "the contents of a communication." Cal. Penal Code § 638.50(b). If the very data that defines a pen register categorically defeats standing, then the Legislature enacted a statute with no possible application. "Courts should interpret statutes … so as to give force and effect to every provision and not in a way which would render words or clauses nugatory, inoperative or meaningless." *Committee for Responsible School Expansion v. Hermosa Beach City School Dist.*, 142 Cal.App.4th 1178, 1186 (2006). Section 638.51 creates a standalone prohibition, enacted precisely to regulate surveillance devices that capture non-content data falling outside Section 631. Treating the two provisions as coextensive collapses the statutory scheme and renders Section 638.51 superfluous. As the court recognized in *Moody v. C2 Educ. Sys., Inc.*, 742 F. Supp. 3d 1072, 1078 (C.D. Cal. 2024), Section 637.2 "expressly states that all CIPA violations, including § 638.51, confer a private right of action."

This Court in *Fregosa* adopted a function-based reading of the statute, holding that "[w]hat matters under the statute is not the form of the tool, but rather the function—specifically, whether the process records routing or addressing information of a communication." 2025 WL 2886399 at *4. The court found the Legislature's use of the phrase "device or process" to be "technology-neutral" and the statutory text "deliberately expansive." *Id.* at *5, 9. And in *Krzyzek*, the court stated that "[n]umerous courts in this district and elsewhere have already found pixels to be 'pen registers' at the pleading stage" and allowed the Section 638.51 claim to proceed. 2026 WL 206855 at *9.

Defendant acknowledges that this Court disagreed with the *Kishnani* framework in *Fregosa* and *Mirmalek*, but argues that "lack of Article III standing was neither briefed nor ruled

on" in those cases. Mot. at 16. That is correct as to standing, and Plaintiff does not rely on *Fregosa* or *Mirmalek* for the standing analysis. Plaintiff relies on *Krzyzek*, which directly addressed and rejected Defendant's standing arguments in a post-*Popa* Section 638.51 case. *Fregosa* and *Mirmalek* remain controlling authority on the statutory construction question: whether web trackers can qualify as pen registers under Section 638.51.

**2. <u>The TAC Adequately Alleges Each Element</u>**

For each of seven trackers, the TAC alleges every element required under Section 638.51:

*Device or process.* Each tracker consists of JavaScript software that captures, identifies, and correlates signaling information. TAC ¶¶ 160-61, 170-71, 179-80, 191-92, 201-02, 215-16, 228. This Court has held that such software constitutes a "device or process" under the statute. *Fregosa*, 2025 WL 2886399 at *6.; s*ee also James v. Walt Disney Co.,* 701 F.Supp.3d 942, 959 (N.D. Cal. 2023) (treating embedded tracking code as a qualifying device); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[C]ourts should focus less on the form of the data collector and more on the result.").

*Captures addressing and signaling information.* Each tracker transmits IP addresses, page URLs, timestamps, persistent identifiers, referrer data, and device metadata to third-party servers. TAC ¶¶ 159, 162, 169, 172, 178, 181, 193, 206, 217-18, 226, 229. The Court in *Fregosa* stated, "[a]n IP address … is quintessential 'addressing' information." 2025 WL 2886399 at *5.

*Without court order or consent.* Defendant did not obtain a court order or Plaintiff's consent. TAC ¶¶ 163, 173, 182, 195, 207, 219, 230. The trackers installed and began transmitting data before Plaintiff had any opportunity to interact with any consent mechanism.

*Installation and use.* The trackers execute automatically on page load, initiating outbound network connections and transmitting data before any user interaction. The TAC is corroborated by DevTools network captures (TAC Figs. 9, 13, 16, 18, 20-21, 23), packet-level Wireshark evidence (TAC Figs. 10, 14, 17, 19, 22), and cookie placement without affirmative user action (TAC Figs. 11, 12, 15, 24). AliExpress's "active role" in embedding trackers is "enough to plead 'use' under § 638.51, even if technical operations were handled by third parties." *Fregosa*, 2025 WL 2886399 at *8.

**C. Defendant's Factual Arguments Are Improper at the Pleading Stage**

Defendant argues that Plaintiff's visits were "calculated stops on the road to filing this lawsuit" (Mot. at 2), that Plaintiff and his counsel are serial CIPA filers (Mot. at 5; fn.4-5), and that AliExpress "conspicuously discloses" its tracking in its Privacy Policy (Mot. at 3). None of these arguments bear on whether the TAC states a claim.

Whether Plaintiff's visits were investigatory does not negate that the trackers operated on him. Section 638.51 contains no "good faith visitor" requirement. The number of cases cited to is irrelevant as to whether this complaint states a claim. And a privacy policy buried in a website footer does not constitute the "consent of the user" that Section 638.51(b)(5) requires. Disclosure is not consent. The trackers executed on page load before Plaintiff had any opportunity to review or respond to any consent mechanism. TAC ¶¶ 163, 173, 182, 195, 207, 219, 230.

Defendant also suggests the TAC is deficient because it does not allege that Plaintiff used his own device. Mot. at 4. The TAC alleges that Plaintiff visited the website and made a credit card purchase (TAC ¶ 15), which raises a reasonable inference that he used his own device. At the pleading stage, the Court draws all reasonable inferences in Plaintiff's favor. *Wolfe*, 392 F.3d at 362, *overruled on other grounds by Munoz*, 91 F.4th at 981. Moreover, Section 638.51 does not limit standing to device owners. The statute prohibits the installation or use of a "pen register or a trap and trace device" without a court order without regard to ownership. Cal. Penal Code § 638.51(a).

**D. Dismissal with Prejudice Is Unwarranted**

Defendant seeks dismissal with prejudice, arguing futility. Of course, the Court should not dismiss the TAC at all. But if it does so, dismissal as to subject matter jurisdiction must be without prejudice. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("[D]ismissal for lack of subject matter jurisdiction is without prejudice."). As to Defendant's 12(b)(6) arguments, the weight of authority suggests CIPA§ 638.51 claims can be plausibly alleged. While Plaintiff believes he has done so here, the caselaw supports that any alleged deficiencies could be cured by amendment, especially considering the liberal standards of Fed. R. Civ. P.15(a). *Owens v. Kaiser*

*Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (strongly favoring leave to amend). Defendant's characterization of the prior amendments as "four bites at the apple" (Mot. at 2-3; 16) is misleading: each amendment addressed a distinct issue, and this is Plaintiff's first opportunity to respond to Defendant's standing arguments on this complaint.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. If the Court grants the Motion, Plaintiff respectfully requests leave to amend.

Dated: February 20, 2026

**BURSOR & FISHER, P.A.**

By: */s/ Daniel S. Guerra*
Daniel S. Guerra

L. Timothy Fisher (SBN 191626)
Daniel S. Guerra (SBN 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
40729 Village Dr., Suite 8 – 1989
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff*