CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
sblankenship@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650-815-4100
Facsimile: 650-815-4199

NOWELL D. BAMBERGER (admitted *pro hac vice*)
nbamberger@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

*Counsel for Defendant*
*AliExpress E-Commerce One Pte., Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSEPH ABDULLAH on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ALIEXPRESS E-COMMERCE ONE PTE., LTD,<br><br>Defendant. | Case No. 3:25-CV-05206 CRB<br><br>**DEFENDANT ALIEXPRESS E-COMMERCE ONE PTE., LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Hearing Date: March 20, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6<br>Before: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. ARGUMENT .......... 1

A. Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) .......... 1

1. Plaintiff has not alleged harm to a legally protectable privacy interest .......... 2

2. Plaintiff has not alleged a legally cognizable economic injury .......... 8

3. Plaintiff cannot establish standing for his CIPA claim through allegations of Unjust Enrichment .......... 10

B. Dismissal with Prejudice is Warranted .......... 11

III. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102 (N.D. Cal. Sep. 30, 2025) .... 2, 11

*Bradshaw v. Lowe's Cos.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .... 6

*Burton v. Time Warner Cable Inc.*, 2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .... 9

*Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .... 7

*Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .... 8, 9

*Dawidzik v. Tesla*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .... 4, 6, 11

*Deivaprakash v. Conde Nast Digit.*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025) .... 7

*Dept. of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .... 2

*F.T.C. v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) .... 11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .... 8

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .... 6

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) .... 2

*Frenzel v. AliphCom*, 76 F. Supp.3d 999 (N.D. Cal. 2014) .... 10

*Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .... 11

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .... 7

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .... 6, 7

*Harris v. iHeartMedia, Inc.*, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .... 8

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) .... 7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) .... 4

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .... 4, 9

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .... 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .... 3

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .... 5, 6, 7

*LaCourt v. Specific Media, Inc*.,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .... 9

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .... 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 11

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .... 2

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .... 10

*Popa v. Microsoft Corp.,*
153 F.4th 784 (9th Cir. 2025) .... *passim*

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .... 4

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 2

## I. INTRODUCTION AND SUMMARY OF ARGUMENT[1]

Plaintiff's Opposition fails to address the fundamental defect requiring dismissal. After four attempts to plead a viable CIPA claim against AliExpress, the TAC still fails to allege that any sensitive or private information was collected (either during a "credit card purchase" or by Third-Party Trackers), that any harm remotely resembling a recognized common law privacy tort occurred, or that his data had economic value to him personally—prerequisites to Article III standing on his CIPA claim and this Court's jurisdiction.

Rather than mustering the necessary facts (which he cannot), Plaintiff insists that he should be permitted to proceed based on allegations establishing, at most, the collection of routine commercial browsing data including IP addresses, browser type, screen resolution, pages visited, and similar metadata that courts have consistently held to be non-private and non-sensitive. But the Ninth Circuit squarely rejected that assertion in *Popa v. Microsoft Corporation*, holding that the collection of this exact information does not constitute the kind of "highly offensive" intrusion on privacy cognizable at common law or capable of supporting Article III standing. 153 F.4th 784, 791 (9th Cir. 2025). Plaintiff attempts to sidestep *Popa* and the many cases that have since dismissed CIPA claims based on facts identical to those here (*see* Mot. at 1, 7-8) by mischaracterizing his own allegations and invoking cases that involved the collection of far more sensitive personal information (employment histories, religious affiliations, credit scores) or the tracking of plaintiff's "interactions across the internet" (Opp. at 2)—allegations that are nowhere to be found in the TAC. None of these maneuvers saves his claim. The Court should dismiss the TAC with prejudice.

## II. ARGUMENT

### A. Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Plaintiff concedes that the "standing framework is not in dispute" and that he bears the

[1] Capitalized terms have the meanings ascribed to them in AliExpress's Motion and RJN. Citations to "¶" and "Ex." are to TAC; citations to "Mot." are to AliExpress's Motion (Dkt. 39); citations to "Opp." are to Plaintiff's opposition to AliExpress's Motion (Dkt. 41); all emphases are added, and internal citations and quotation marks are omitted.

burden to establish Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Opp. at 1. Plaintiff contends that he has satisfied his burden by showing both a privacy-based injury analogous to a recognized common law tort, and a concrete economic injury based on the value of his data. As set forth below, both arguments fail.

**1. Plaintiff has not alleged harm to a legally protectable privacy interest**

Plaintiff's Opposition ignores the threshold pleading failure under *Popa* that AliExpress identified in its *Motion*. Mot. at 9. Plaintiff contends that his injury falls within "the common law and the literal understandings of privacy" and cites pre-*Popa* cases to support his argument that his purported loss of control over his information is sufficient to establish Article III standing.[2] Opp. at 5. But *Popa* rejected this exact argument, holding that it "finds no support in *TransUnion*." 153 F.4th at 794. Rather, a plaintiff asserting a privacy-based injury must identify a harm that bears "a sufficiently close relationship" to one of the four discrete common law privacy torts (intrusion upon seclusion, appropriation of name or likeness, publicity given to private life, or false light) and cannot rely on a generic "right to privacy" to satisfy that requirement. *Id.* at 790-92. Apparently recognizing his deficiency, Plaintiff argues for the first time in his Opposition (at 5) that his injury is "at least analogous to an intrusion upon seclusion." But that belated argument is not supported by the TAC's allegations or any meaningful legal analysis.

Intrusion upon seclusion requires "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Popa*, 153 F.4th at 791. As in *Popa*, Plaintiff fails to

[2] Regardless, the pre-*Popa* cases Plaintiff cites arose in materially different contexts—circumstances that would likely satisfy Article III standing even under the *Popa* framework. *See Dept. of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 762-63, 780 (1989) (finding FBI-compiled "rap sheets" are exempt from disclosure under the Freedom of Information Act); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 569, 579-80 (N.D. Cal. 2025) (finding Article III standing where defendant allegedly disseminated users' "highly personal information about menstruation, ovulation, pregnancy goals"). Indeed, many cases Plaintiff cites in his Opposition arose in circumstances materially different from those presented here. *See, e.g., In re Accellion, Inc. Data Breach Litig.,* 2025 WL 2799102, at *1 (N.D. Cal. Sep. 30, 2025) (regarding a data breach of sensitive files and data); *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (regarding the collection of browsing activity across a network of thousands of retailers and using that network to barrage that person's device with unwanted emails).

"explain how the tracking of [his] interactions with [the Website] caused [him] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," nor does he identify any information collected that was "embarrassing, invasive, or otherwise private." *Id.* Plaintiff likewise fails to respond to AliExpress's showing, backed by an overwhelming body of case law, that the data at issue here is routine, non-private, and of the type that reasonable users expect to be collected when browsing the internet. Mot. at 10-12. This alone is fatal to Plaintiff's Article III standing.

Plaintiff's efforts to distinguish *Popa* are unavailing. The information that Plaintiff alleges the Third-Party Trackers are capable of collecting—"IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP" (¶ 9)—is virtually identical to the information Plaintiff concedes was *not* personal information in *Popa*. Opp. at 9. In *Popa*, the court affirmed dismissal where over 30 categories of user data were collected, including the user's mailing address, device and browser information, "mouse movements, clicks, keystrokes . . ., URLs of web pages visited, and/or other electronic communications in real-time," holding that such information was not "embarrassing, invasive, or otherwise private" and that its collection was not "highly offensive to a reasonable person." 153 F.4th at 786, 791.

No reasonable person would find it "highly offensive" for a commercial website to collect routine browsing metadata like IP addresses, screen resolution, and pages visited on that website—information that has been shared with every website the user visits since the dawn of the internet. Plaintiff offers the Court no principled basis to reach a different result here. His own allegations confirm that the data at issue relates to nothing more sensitive than his browsing behavior on commercial retail pages on the Website (¶ 143), behavior that is no different from a "store clerk's observing shoppers." *Popa*, 153 F.4th at 791.

Indeed, case after case has held, both before and after *Popa*, that the collection of such information by third-party trackers cannot establish Article III standing to assert a CIPA claim. *See, e.g., Kishnani v. Royal Caribbean Cruises Ltd.,* 2025 WL 1745726 *1, 3 (N.D. Cal. June 24,

2025) (dismissing CIPA claim premised on the collection of "browser information, geographic information, referral tracking, and URL tracking" for lack of Article III standing); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (applying *Popa* and dismissing CIPA claim where plaintiff failed to allege that the collection of IP addresses, device identifiers, and URL referrer paths was "highly offensive"). Plaintiff makes no effort to distinguish the type of information collected in those cases and in *Popa* from the information he alleges was collected here. Plaintiff also fails to acknowledge that *Dawidzik v. Tesla*—a case brought by the same law firm that represents Plaintiff here—was dismissed for lack of Article III standing based on the collection of information virtually identical to what is alleged here: "IP addresses, browser and device type, screen resolution, installed fonts, color depth, time zone, operating system, pages visited, session duration, scroll depth and/or mouse movement, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." 2025 WL 3786963, at *1, 3 (C.D. Cal. Dec. 29, 2025). The same result should obtain here.

Apparently recognizing that his position is incompatible with *Popa* and its progeny, Plaintiff resorts to a series of misguided evasive maneuvers, but each is easily dispensed with.

First, Plaintiff argues that the information collected here is more invasive than in *Popa* because there the defendant excluded street numbers and zip codes from its collection of users' home addresses. Opp. at 9. But here, Plaintiff does not allege that the Third-Party Trackers are even capable of collecting users' home addresses, only that the collection of IP addresses *may* be used to infer "the state or region from which Plaintiff accessed the Website." ¶ 148. Moreover, he never alleges (because he cannot) that AliExpress or the Third-Party Trackers collected any part of his home address. He does not even allege that he accessed the Website from his home. In other words, he does not allege that the Third-Party trackers collected *any* part of his home address, making his case even weaker than that dismissed in *Popa*. In any event, the information that he actually alleges was collected—his IP address—has conclusively been held time and again not to constitute private or sensitive information capable of supporting an injury to privacy, even where it might be used to infer a user's general geographic location. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3

(N.D. Cal. Oct. 2, 2025) (dismissing CIPA claim with prejudice for failure to allege a "concrete privacy injury" despite allegations that "geolocation information" was collected).

Second, Plaintiff argues that *Popa* is distinguishable because it involved only the tracking of "non-sensitive" interactions with a single website. Opp. at 9. But the same is true here: Plaintiff does not allege that the Third-Party Trackers on AliExpress's Website collected his interactions with any website other than AliExpress's. *See* ¶ 143-45. Plaintiff's reliance on *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) is, therefore, both perplexing and unavailing. *Krzyzek* was a case brought against a data broker, where the plaintiff alleged that the defendant tracked him across numerous websites, including Apartmenttherapy.com, Foxnews.com, and BusinessInsider.com. *Id.* at *1. But in this case, as in *Popa*, the alleged tracking activity merely "involved non-sensitive browsing activity on a single . . . website." Opp. at 2 (citing *Krzyzek*, 2026 WL 206855 at *3 n.5). And unlike in *Krzyzek*, there is no allegation here that AliExpress "created or added to detailed user profiles by tracking [Plaintiff's] interactions across the internet," i.e., on sites other than the AliExpress Website. *Id.*[3]

Plaintiff contends that the Court should decline to dismiss here because the "surveillance occurred during a credit card purchase." Opp. at 1. However, Plaintiff does not allege what, if any, "sensitive information" was collected during that transaction, let alone that he provided, or that AliExpress or any Third-Party Tracker, collected his credit card information. *See* ¶ 15. Nor does he allege that the Third-Party Trackers are even capable of collecting such information during transactions on the Website (because they are not). Rather, the TAC complains solely about collection by the Third-Party Trackers of his "Device Metadata" and "User Information" (¶ 69), namely, "IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." ¶ 9. These are the exact kinds of non-sensitive browsing information found not to support a claim in *Popa*, and have nothing

[3] Plaintiff also asserts that *Popa* involves only the "website operator's collection of its own visitors' browsing." Opp. at 1. But that is also wrong: *Popa* involved the collection of data through a tool owned and operated by a third-party, *not* the website operator. 153 F.4th at 786.

to do with any purported credit card transaction (if one was even consummated, which Plaintiff also fails to allege).

Plaintiff also argues that *Popa* is distinguishable because of what the TAC claims the Third-Party Trackers *could* do with the information collected, but the TAC stops well short of alleging that any of these possibilities came to pass here. Opp. at 9. Plaintiff relies on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), for the proposition that linking collected information to comprehensive, non-anonymous advertising profiles satisfies Article III standing. Opp. at 4. But Plaintiff does not allege that any such profile was created for him. And courts have dismissed attempts to analogize to *In re Facebook* where, as here, the plaintiff merely alleges that the trackers at issue only collect information from *defendant*'s website. *See Bradshaw v. Lowe's Cos.,* 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (finding plaintiff's analogy to *In re Facebook* "inapt" where plaintiff alleged that the tracker enabled defendant to "track users' interactions with *the* website," including "IP addresses," undefined "unique identifiers," and "browsing information"); *Dawidzik*, 2025 WL 3786963, at *4 (rejecting analogy to *In re Facebook* where third-party trackers "caused the user's browser to transmit certain data to third-party servers only when the user visited Defendant's website").

If anything, *In re Facebook* and the other cases Plaintiff cites only serve to demonstrate why dismissal is required here. For example, in *In re Facebook*, the plaintiffs alleged that Facebook collected browsing histories and linked those browsing histories to "users' *personal Facebook profiles*—profiles that could include a user's employment history and political and religious affiliation" or would otherwise reveal "an individual's likes, dislikes, interests, and habits." 956 F. 3d at 599; *see also Krzyzek*, 2026 WL 206855, at *1 (alleging that the defendant "assign[ed] an ID number to an individual so that the individual [was] attached to a record of their web and app activity for the purpose of targeted advertising"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (alleging that defendant compiled "detailed profiles of each Plaintiff's online web browsing activity tied to their email address"); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026) (alleging that a data broker curated "detailed user profiles" of a wide range of information, "including information about credit scores, genres of television

viewed, makes and models of vehicles owned, types of preferred food, specific products purchased at the supermarket, and language spoken in the home."); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *1 (S.D. Cal. Nov. 18, 2025) (alleging that the TikTok Pixel "collect[ed] information about the website user and match[ed] it to information within the existing TikTok database" and also "utilize[d] 'AutoAdvanced Matching,' which allow[ed] personal information (e.g., name, date of birth, address) to be sent to TikTok and identify a targeted individual with certainty"); *Hassid v. Alex & Ani, LLC*, 2026 WL 160535, at *1 (C.D. Cal. Jan. 20, 2026) (same).[4] Notably, most of the above cases are claims against the data collector itself, not a website operator that merely hosts third-party tracking technology.

Similar allegations are noticeably absent from the TAC. Plaintiff leans heavily on his allegation that Taboola, one of the Third-Party Trackers at issue, is a registered data broker. Opp. at 4. Yet, the TAC does nothing more than paint a broad cautionary tale about the data broker industry, warning in sweeping terms that "data brokers *like* Taboola . . . *can* track users across the internet . . . , building comprehensive user profiles." ¶ 110. A generalized warning about an industry's capabilities, however, is not a factual allegation about what actually occurred here. Critically, the TAC contains no allegation whatsoever that Taboola collected or is capable of collecting information linking any tracked activity to a specific individual through personal identifying information—let alone to Plaintiff himself. *Cf. Krzyzek*, 2026 WL 206855, at *1 (alleging that the defendant, a data broker, linked users' web browsing activity to specific ID numbers); *Gilligan*, 2026 WL 32259, at *2 (alleging that defendant, a data broker, linked users' web browsing activity to their email address). Plaintiff does not allege that he provided (or that any of the Third-Party Trackers could have collected or did collect) any personal identifying information about him, such as his address, email address, or social media account information. At

[4] Plaintiff also cites *Deivaprakash v. Conde Nast Digit.*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025). However, that case examined *statutory* standing and found that the collection of information extended beyond "IP address and metadata," and that third parties generated "profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics." *Id.* at 1106. No such facts are alleged here. Plaintiff's reliance on *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, *6 (N.D. Cal. July 14, 2025), is even further afield. That pre-*Popa* decision endorsed the proposition that CIPA "codifies a substantive right to privacy," a violation of which gives rise to Article III standing (*id.*)—precisely the reading of *TransUnion* that *Popa* unequivocally rejected. *See Popa*, 153 F.4th at 792.

this point, the harm Plaintiff seeks to evoke is purely speculative and insufficient to confer Article III standing. *See Popa*, 153 F.4th at 791 n.5 (finding no standing where complaint included "no allegations plausibly linking these potential, generalized harms" to the plaintiff herself); *cf. Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1-2 (N.D. Cal. Jan. 29, 2026) (finding concrete injury where, unlike here, plaintiff alleged he was in fact "identified and linked to a comprehensive, non-anonymous profile[]'").

The overwhelming weight of authority makes clear that the type of information Plaintiff alleges was collected here cannot support a concrete privacy injury sufficient to confer Article III standing. Nor does Plaintiff allege that any hypothetical use of this information would be highly offensive or actionable at common law, let alone that his information was actually collected, linked to his identity, or used in any way that resulted in a cognizable harm. Plaintiff's speculative and conclusory allegations fall far short of what Article III requires.

**2. Plaintiff has not alleged a legally cognizable economic injury**

Plaintiff also claims an economic injury as an alternative to his privacy injury, but his allegations fall short in this respect as well. Plaintiff concedes that, to state a concrete economic injury, he must allege that the information collected by the Third-Party Trackers has "independent economic value." Opp. at 6. He insists he has met this requirement by alleging that "consumer behavioral data is bought and sold as a commodity," and argues that, "[a]t the pleading stage, these allegations suffice." *Id.* Plaintiff cites no authority to support this position, because there is none.

It is well settled that merely alleging there is a commercial market for data is insufficient to confer Article III standing. As the court explained in *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, "although it's true that each user's information is worth a certain amount of money to [the defendant] and the companies [the defendant] gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user." 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Indeed, courts have routinely dismissed CIPA and other privacy claims at the pleading stage for lack of Article III standing where plaintiffs fail to "plausibly allege that they intended to sell their non-disclosed personal information to someone else ... [or] that someone else would have bought it as a stand-alone product." *Id.*; *see also Carolus v. Nexstar Media*

*Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025); *Khamooshi*, 2025 WL 2822879, at *4. Courts have long recognized this principle. *See LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011); *Burton v. Time Warner Cable Inc.*, 2013 WL 3337784, at *10 (C.D. Cal. Mar. 20, 2013) (citing *LaCourt* and holding that a plaintiff cannot establish an economic injury unless they demonstrate they were "foreclosed from entering into a 'value-for-value exchange' as a result of [the] alleged conduct."). Here, Plaintiff makes no such allegation.

Plaintiff attempts to sidestep *Khamooshi* and *Carolus* in the only way he can—by ignoring the portions of those decisions that speak directly to economic harm. In *Khamooshi*, the court found no privacy injury where the information collected mirrored what is alleged here—"IP addresses, browser and device data, and 'other identifying information,' as well as browsing activity, geolocation information, device type, browser type, and 'device fingerprints'"—and dismissed the CIPA claim for lack of Article III standing where the plaintiff only generally alleged that the data "carrie[d] financial value." 2025 WL 2822879, at *2-4. The *Carolus* court reached the same result, finding allegations of the collection of IP addresses, "browser and device data," and "other identifying information" insufficient to confer a privacy injury, and dismissing the CIPA claim where plaintiffs offered no allegations about the monetary value of their data to them or how that value was diminished once tracked. 2025 WL 1338193, at *1. Plaintiff's allegations of injury to both his privacy and economic interests are indistinguishable from those rejected as deficient in *Khamooshi* and *Carolus*, and his CIPA claim should meet the same fate: dismissal.

Plaintiff is also wrong that AliExpress is overstating his burden. Opp. at 7. He argues that Plaintiff need not plead the "precise 'independent economic value' of his data" and that a "quantified valuation" is not required. Opp. at 7. But this misses the point. Plaintiff fails to allege that the collected information has *any* value to *him*, quantified or otherwise, or that any action by AliExpress caused damages to that value, as is required. Again, Plaintiff alleges that the Third-Party Trackers are only capable of collecting User Information as defined in the TAC. ¶ 9 ("IP addresses, browser and device type, screen resolution, operating system, pages visited, session duration, scroll depth, mouse movements, click behavior, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP"). The TAC does not allege that this type of

information has *any* discernable value to Plaintiff *himself*. Nor does he allege that he intended to capitalize off this information or explain how he is now prohibited from doing so. *Cf.* ¶¶ 84-87 (alleging that information like social security numbers, bank account records, contact information, and birthdays carry value, but not alleging that any such information was collected for *him*). This simply is not sufficient to establish the requisite economic harm to support Article III standing. *See Low v. LinkedIn Corp.*, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) (finding no economic harm where plaintiff failed to allege how he was foreclosed from capitalizing on the value of his personal data).

Unable to point to well-pleaded allegations in the TAC to support his claim of economic injury, Plaintiff attempts a new articulation of his alleged injury in the Opposition: "that Plaintiff surrendered monetizable data as an undisclosed cost of a commercial transaction." Opp. at 6-7. This new factual assertion is not properly considered, as it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom,* 76 F. Supp.3d 999, 1009 (N.D. Cal. 2014). But even if Plaintiff had alleged this in the TAC, he fails to cite any authority that this would suffice to confer a concrete economic injury, because it does not. Even assuming that his data was "monetizable" by the Third-Party Trackers, he still fails to allege that it was "monetizable" by him, that he has made any attempt to monetize it, or that he has been prevented from doing so going forward. Thus, any such allegation would remain defective. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014) (to plead Article III standing, Plaintiff "must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own").

### 3. Plaintiff cannot establish standing for his CIPA claim through allegations of Unjust Enrichment

Plaintiff appears to disavow his theory that unjust enrichment serves as an "independent basis for standing," arguing now that the concept merely "corroborates [his] injury." Opp. at 7. On the other hand, he doubles down, arguing that the "unauthorized taking, dissemination, and monetization of Plaintiff's data maps onto restitution and unjust enrichment at common law." *Id.* at 8. To the extent Plaintiff continues to press the theory in any form, it fails for the reasons stated

in AliExpress's Motion. The TAC fails to allege *how* the collection of Plaintiff's data through the Third-Party Trackers unjustly enriched AliExpress at his expense or could give rise to a basis for restitution, and therefore cannot establish a concrete injury. Mot. at 14. Nor could Plaintiff cure that deficiency, because the routine, non-sensitive nature of the information at issue forecloses any plausible claim that its collection conferred an unjust benefit at Plaintiff's expense. *Id.* at 14-15; *see Gabrielli v. Insider, Inc.*, 2025 WL 522515, *7 (S.D.N.Y. Feb. 18, 2025); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025).

Moreover, Plaintiff's unjust enrichment theory—even if properly pleaded, which it is not—cannot establish standing for a CIPA damages claim, as unjust enrichment is limited to equitable relief. *See F.T.C. v. Pantron I Corp*., 33 F.3d 1088, 1102 (9th Cir. 1994) ("The remedy of restitution seeks to correct unjust enrichment.") Plaintiff counters that AliExpress "conflates the standing inquiry with the remedial inquiry" (Opp. at 8), but overlooks that the availability of the remedy—redressability—is a core component of the standing inquiry. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And standing must be demonstrated "separately for each form of relief sought." *In re Accellion, Inc.*, 2025 WL 2799102, at *7. Undeterred, and without citing any authority, Plaintiff contends that "[a] plaintiff who alleges that a defendant was unjustly enriched by an unauthorized taking of his data has alleged a concrete injury regardless of the ultimate form of relief." Opp. at 8. In so arguing, Plaintiff ignores the case law cited in AliExpress's Motion reaching exactly the opposite conclusion. *See* Mot. at 14 (citing cases); *see Dawidzik*, 2025 WL 3786963, at *5.

### B. Dismissal with Prejudice is Warranted

Plaintiff's assertion that this is his "first opportunity" to respond to AliExpress's standing arguments is not accurate. Opp. at 14. AliExpress's first motion to dismiss (Dkt. 31) advanced nearly identical arguments, and Plaintiff drafted the TAC with full knowledge of the deficiencies. He elected not to remedy them. For example, AliExpress's first motion put Plaintiff on notice that he failed to allege that he accessed the Website on his own device (Dkt. 31 at 4)—a foundational omission given his theory that the collection of device metadata injured him. Yet the TAC did not address this defect. Nor, despite AliExpress's earlier briefing, has Plaintiff ever alleged facts about

the "sensitive information" he allegedly submitted during his credit card purchase or whether a Third-Party Tracker collected it. *See* ¶ 15. Indeed, the Opposition (but not the TAC) asserts for the first time that he actually "made a credit card purchase on Defendant's website" pursuant to which he "paid full retail price for merchandise," and that the Third-Party Trackers "extracted his … transactional data," (Opp. at 6), but these allegations are nowhere to be found in the TAC and would be deficient in any event because they still fail to identify the "transactional data" that was purportedly provided or extracted.

And further amendment would be futile. The TAC has repeatedly identified the universe of information the Third-Party Trackers are capable of collecting (¶ 9), and none of it can support Article III standing under *Popa*. If Plaintiff had facts to show the collection of data so sensitive it could satisfy *Popa's* "highly offensive" standard, or the kind of economic injury necessary to support Article III standing, those facts presumably would have appeared in one of his four complaints. That they do not justifies dismissal with prejudice. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012) ("A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies") (quoting *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)).

## III. CONCLUSION

The defects warranting dismissal have plagued all four versions of Plaintiff's complaint. Even with the benefit of AliExpress's prior motion to dismiss, the fourth and current version still fails to allege the collection of any sensitive or private information or any cognizable economic injury. His persistent failure to cure these defects demonstrates his inability to marshal the facts necessary to establish Article III standing for his remaining CIPA claim and that further amendment would be futile. For this and the other reasons stated above and in AliExpress's Motion, the Court should dismiss the entire TAC with prejudice.

Dated: March 6, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Angela L. Dunning*
Angela L. Dunning (212047)
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: (650) 815-4100
Email: adunning@cgsh.com

Nowell D. Bamberger (*admitted pro hac vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 974-1500
Email: nbamberger@cgsh.com

*Counsel for AliExpress E-Commerce One Pte., Ltd.*